HENNEN, Respondent, v. HENNEN, Appellant.

*No. 189. Argued January 3, 1972.—Decided February 1, 1972.*
(Also reported in 193 N. W. 2d 717.)

For the appellant there was a brief by *Ross, Stevens, Pick & Ross,* attorneys, and *Frank A. Ross* and *James R. Cole* of counsel, all of Madison, and oral argument by *Frank A. Ross.*

For the respondent there was a brief and oral argument by *David C. Pappas* of Madison.

CONNOR T. HANSEN, J. We would first observe that neither in his brief, nor oral argument, has counsel for the plaintiff submitted any authority in support of his position.

The conclusion in plaintiff's brief contains the following statements:

"There were two alternative approaches considered in the writing of this brief: to prostrate myself and with Buddhistic humility pray the court to recognize my merit and my cause or, by summoning up a measure of arrogance and pomposity, to fully advocate my own worth.

"The latter cause leaves me open to this Court's retort 'Ad populum phaleras ego te intus et in cute novi.' (You may think you're hot stuff, but we know you, buster.) The former leave me defenseless."

Neither suggested alternative presents a resolution for the determination of the issue presented, and perchance counsel is hoist with his own petard. Our examination of the record brings us to the conclusion that the total fees of plaintiff's counsel are excessive and that the trial court did not follow the decisions of this court in determining the amount of the contribution to be paid by the defendant toward the attorney's fees of the plaintiff.

The record demonstrates nothing of unusual complexity in this case. The parties were married on January 27, 1946, and judgment of divorce entered October 13, 1970. At the time the action was commenced, on February 20, 1969, the plaintiff was a forty-three-year-old housewife and part-time student at the University of Wisconsin. Defendant was a fifty-four-year-old physician, engaged in the general practice of medicine. There were two

minor children, Mark Richard, born June 15, 1951, and Gregory John, born May 23, 1950.

May 18, 1970, the parties entered into a stipulation which provided for a final property division and the payment of alimony and support. By the terms of the stipulation, plaintiff received an apartment house located at 1219 Rutledge Street valued at $110,000, an adjoining residence located at 1221 Rutledge Street valued at $18,000, and all of the furnishings and furniture used in connection with the rental of these properties. Both properties were subject to a mortgage of $53,418.99, which plaintiff agreed to assume. Plaintiff also agreed to pay the unpaid real estate taxes for 1969 and the taxes accruing subsequent to January 1, 1970. It was agreed by both parties that the maximum value of this property would be achieved by retaining it under a single ownership. Therefore, instead of dividing the parcels, plaintiff agreed to execute a negotiable promissory note in the amount of $18,000 payable to the defendant on June 1, 1972, and secured by a second mortgage on the property located at 1221 Rutledge Street. A third parcel of real estate was conveyed by the parties as a gift to their then only adult son. Plaintiff also received the balance of a savings account in the amount of $3,256.66, a 1968 Opel automobile and a motorboat. The stipulation also provided plaintiff with alimony in the amount of $600 per month from June 1, 1970, to December 31, 1972, and $250 per month thereafter. Plaintiff was named beneficiary, until January 1, 1973, of $20,000 life insurance maintained by the defendant.

Defendant received a promissory note from the plaintiff in the amount of $18,000, a 1962 Pontiac automobile and a sailboat. He retained life insurance with a cash surrender value of $11,588.75, certain professional interests in the East Madison Clinic, S. C., where he is employed, and common stock and debenture bonds of the E. M. C. Corporation which owns the real estate on which

the East Madison Clinic is located. It appears that the value of these interests is dependent upon defendant's continued association with the clinic. They are also subject to certain buy and sell agreements. The interest in the clinic itself is subject to a contract for the continuation of defendant's salary in the event of his death, disability, retirement or withdrawal from the clinic. The parties are in dispute with respect to the value of these interests, apparently disagreeing over the inclusion of "good will" in their valuation. The net worth of both parties is between $165,000 and $185,000, depending on the value to be ascribed to these professional assets but both parties agree that a determination of this value is unnecessary. Defendant also agreed to name the plaintiff as beneficiary of $20,000 of his life insurance until January 1, 1973, to name the minor children as beneficiaries of a similar amount for a period of four years, and to contribute $1,800 annually for four years to each of the two minor children for their college education. In addition to alimony payments, defendant agreed to be responsible for the support of the two minor children and agreed to pay the plaintiff $150 per month for the support of Mark plus any unusual or extraordinary medical and dental expenses incurred by him as long as he was principally supported by the plaintiff or until he reached majority.

The stipulation further recited that each of the parties was qualified to have the care and custody of the minor children but that no determination of custody would be made at that time. Finally, defendant agreed to pay plaintiff's attorneys the costs and disbursements of the action, exclusive of accountant's fees, and "that part of accountant's fees and attorneys' fees determined by the court to be properly chargeable to defendant."

Trial proceeded in county court the following day, May 19, 1970. After the court heard uncontroverted testimony by plaintiff on the issue of divorce, defendant was

allowed to withdraw his answer and counterclaim, and the action then assumed the posture of a default case.

Testimony was presented on the issue of attorney's fees. Plaintiff's attorney testified his fee was $10,000, which amount was based on the complexity of the case and the amount of the estate involved, to wit: He prepared three orders to show cause and participated in four pretrial conferences; he engaged an accountant to value the stock and business interests of the defendant, and an appraiser to value the real estate owned by the parties; he had expended a total of $91\frac{1}{4}$ hours on the case, inclusive of the eight court appearances; and, the net worth of the parties was $195,000. He also emphasized the beneficial results he obtained for the plaintiff.[1] Costs and disbursements included $240 for appraiser's fees, $800.02 for accountant's fees, and $44.15 for other disbursements.

Defendant testified that his salary from the clinic was $30,000 in 1969. He presented a budget which reflected that after the payment of certain fixed monthly expenses he was left with approximately $300 on which to live. Defendant's attorney argued that defendant was economically unable to pay plaintiff's attorney's fees. We do not consider the amount of the contribution to the accountant's fees is at issue on this appeal, although it was argued that such an expenditure was unnecessary and defendant should therefore not be required to pay the whole amount.

At the close of all of the testimony the court entered a decree of divorce incorporating the stipulation in its findings of fact and conclusions of law. The court took the matter of fees under advisement and on May 21, 1970, by written decision, directed the defendant to pay $6,500 toward plaintiff's attorney's fees and $300 toward the accountant's fees.

[1] It was testified that plaintiff received from 33 percent to 40 percent of the property involved, depending on the valuation of defendant's professional assets.

*Reasonableness of attorney's fees.*

We first consider the reasonableness of the total amount of attorney's fees to which defendant has been directed to contribute. In order to determine the amount of any contribution, it is first necessary to establish the reasonableness of the total fee. *O'Connor v. O'Connor* (1970), 48 Wis. 2d 535, 180 N. W. 2d 735. This court has stated that a trial court's determination of the value of attorney's fees will be sustained unless clearly unreasonable and against the great weight and clear preponderance of the evidence. *Knoll v. Klatt* (1969), 43 Wis. 2d 265, 271, 168 N. W. 2d 555. However, in *Touchett v. E Z Paintr Corp.* (1961), 14 Wis. 2d 479, 488, 111 N. W. 2d 419, it was held that a trial court's determination of the value of legal services constituted an exception to the general rule that a trial court's findings will not be disturbed on appeal unless contrary to the "great-weight-and-clear-preponderance" test because the expertise necessary for such a determination is shared alike by the members of this court with trial courts.[2] In *Touchett v. E Z Paintr Corp., supra,* page 488, the court quoted what it regarded the best statement of the proper factors to be considered in the valuation of legal services:

" 'The things to be taken into consideration in determining the compensation to be recovered by an attorney are the amount and character of the services rendered, the labor, the time, and trouble involved, the character and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and the standing of the attorney in his profession; to which may be added the general ability of the client to pay and the pecuniary benefit derived from the services.' "

[2] *See also: State v. DeKeyser* (1965), 29 Wis. 2d 132, 138 N. W. 2d 129, and *Lakeshore Commercial Finance Corp. v. Bradford Arms Corp.* (1970), 45 Wis. 2d 313, 330, 173 N. W. 2d 165.

The instant case was an uncontested action for divorce. Although there were a number of pretrial conferences and orders to show cause, it is not demonstrated that these services required an extraordinary amount of professional skill. Valuation of the assets was accomplished by an appraiser and an accountant whose fees were charged in addition to the 91¼ hours expended by plaintiff's attorney. In *Schmidt v. Schmidt* (1968), 40 Wis. 2d 649, 162 N. W. 2d 618, it was stipulated that a total of $15,000 would be deducted from the net estate of $200,000 for the payment of both parties' attorneys' fees. This court stated that the allowance appeared reasonable considering the unusual amount of property involved, which included two separate homes, a lake cottage, a beer and liquor depot, 29 other separate parcels of real estate and other personal property. Most of the real property was encumbered by mortgages and both parties had appraisals made. In *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 155 N. W. 2d 130, the court affirmed an award of more than $11,000 out of a net estate of $231,250. However, the award went to five separate attorneys in a case which, the court noted, involved a long and bitter jury trial on the issue of adultery, followed by many conferences, motions, testimony by accountants and appraisers, and the submission of exhaustive briefs by both sides. The present situation is obviously not so complex.

Although the instant case involved property with a considerable value, this factor does not justify a fee of $10,000. Nor can such a large fee be predicated on this defendant's ability to pay. Defendant did not agree to assume all the attorney's fees incurred by the plaintiff, but only agreed to pay that portion of the total fee which was properly chargeable to him. His ability to pay is relevant only to the issue of contribution, not to a determination of the total fee.

Therefore, after reviewing the record and considering the reasonable value of professional legal services rendered in this case, it is our considered judgment that $5,000 is a reasonable value of such services.

*Allowance for plaintiff's attorney's fees.*

The allowance of attorney's fees in a divorce action is a matter resting within the discretion of the trial court. *O'Connor v. O'Connor, supra; Williams v. Williams* (1969), 44 Wis. 2d 651, 171 N. W. 2d 902; *Johnson v. Johnson* (1969), 42 Wis. 2d 237, 166 N. W. 2d 230. Unless an abuse of discretion can be shown, this court will affirm the determination of the trial court. *Spheeris v. Spheeris, supra.* An abuse of discretion may arise where there is a failure to consider all of the relevant factors and principles of law applicable to a particular situation, *Endeavor-Oxford Union Free High School Dist. v. Walters* (1955), 270 Wis. 561, 72 N. W. 2d 535, or where, under the circumstances of a particular case, a division of property is considered either excessive or inadequate. *Seiler v. Seiler* (1970), 48 Wis. 2d 400, 180 N. W. 2d 627.

In the instant case, the trial court based its award of attorney's fees on the following criteria:

"With respect to the contribution to the plaintiff's attorney fees, the court took into consideration the following factors, not necessarily in order of their importance: the estate of the parties, the number of hours spent on the case by Mr. Pappas, the complexity of the case, the client's ability to pay, and the results achieved by Mr. Pappas on behalf of his client.

"The court believes that the results were extremely beneficial for Mrs. Hennen. The court further is aware that a contribution is simply a contribution toward Mr. Pappas' attorney fees and would expect Mr. Pappas to bill Mrs. Hennen for the remainder of his fee. . . ."

In order for a court to direct the husband to contribute toward his wife's attorney's fees in a divorce action,

there must be established a need on the part of the wife and an ability to pay on the part of the husband. *Balaam v. Balaam* (1971), 52 Wis. 2d 20, 32, 187 N. W. 2d 867:

"'. . . Where the wife is able to pay her own attorney out of income or assets, or where the husband does not have the ability to pay such contribution, there is no basis in law or in equity for requiring a husband to contribute towards payment of a fee owed by his wife to her counsel.'"

*Hirth v. Hirth* (1970), 48 Wis. 2d 491, 497, 180 N. W. 2d 601; *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282. In the *Hirth Case,* this court detailed factors which are material in determining the needs of the wife and the husband's ability to pay. Among the factors which necessarily must be considered are the assets, income and liabilities of both parties.

When considering the allowance for attorney's fees, the trial court stated that it "believes that the results were extremely beneficial for Mrs. Hennen." Assuming such to be a fact, and without so deciding, this would not afford a basis for directing an excessive contribution by defendant toward plaintiff's attorney's fees. The converse would be true because it would go directly to the question of the plaintiff's need for such assistance.

Although the trial court stated it had considered plaintiff's ability to pay, neither the record, the decision of the trial court, nor the findings of fact, clearly establish the extent of the need on the part of the plaintiff for an allowance for her attorney's fees. The record clearly does not establish that the trial court considered the ability of the defendant to pay the allowance ordered. Here, however, defendant and plaintiff stipulated and agreed that the defendant would pay to the plaintiff's attorney "that part of accountant's fees and attorneys' fees determined by the court to be properly chargeable to defendant." The stipulation of the parties, while leaving the amount of the contribution unfixed,

clearly recognizes that the plaintiff is entitled to some contribution by the defendant to her attorney's fees. Furthermore, in his brief, defendant concedes that he is liable for some contribution.

The stipulation in the instant case, having received the approval of the trial court, establishes the need of the plaintiff and the ability of the defendant to pay without such detailed findings as would otherwise be required.

Since we have found the total fee of $10,000 to be excessive, it becomes necessary to consider the appropriate amount of the contribution. While the record is not as complete as might be desirable for this court to make a determination as to the amount of the allowance for plaintiff's attorney's fees, we consider it to be adequate. Furthermore, we are of the opinion that the interest of justice and of both parties will best be served by the resolution of this issue on appeal, rather than by remand for further litigation. Among other responsibilities incumbent on each of the parties, we are cognizant of the fact that the plaintiff assumed substantial obligations in the maintenance of the real estate she received in the property settlement. Likewise, this created certain responsibilities which the defendant must meet in addition to his obligations for alimony and support of the children. After a full consideration of the issue, we deem it appropriate that the defendant contribute $2,500 toward the plaintiff's attorney's fees. It is ordered that the judgment be modified to so provide.

The judgment is modified to provide that $5,000 is the reasonable value of professional legal services performed in behalf of the plaintiff, and that the sum of $2,500 is a fair and reasonable sum to direct the defendant to contribute toward payment of such services.

*By the Court.*—Judgment modified and, as modified, affirmed. No costs to be awarded either party on this appeal.