IN RE the MARRIAGE OF Patrice B. STASEY v. Robert L. STASEY:

Patrice B. STASEY, Appellant,

v.

Kathleen Ortman MILLER, Respondent.†

Supreme Court

*No. 90-2075. Oral argument February 25, 1992.—Decided May 7, 1992.*

(Also reported in 483 N.W.2d 221.)

†Motion for reconsideration denied June 24, 1992, Heffernan, C.J., took no part.

For the appellant there were briefs (in the court of appeals) by *John H. Correll* and *Correll Law Office, Ltd.,* Milwaukee and oral argument by *John H. Correll.*

For the respondent there was a brief (in the court of appeals) by *Michael S. Heffernan* and *Stolper, Koritzinsky, Brewster & Neider, S.C.,* Madison and oral argument by *Mr. Heffernan.*

SHIRLEY S. ABRAHAMSON, J. This is an appeal from an order of the Circuit Court of Waukesha County, Robert G. Mawdsley, Circuit Judge, refusing to vacate that part of the divorce judgment awarding attorney fees and a mortgage lien to Patrice Stasey's attorney, Kathleen Ortman Miller.[1] We accepted this appeal on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats. 1989–90.

The court of appeals certified the following issue: When a dispute arises during a divorce action between an attorney and her client about attorney fees, may the circuit court granting the divorce determine the amount of the fees and order a judgment entered in favor of the attorney against her client? In other words, may an attorney who continues to represent a client in a divorce action ask the circuit court to determine fees in lieu of bringing a separate action against the client after the divorce action ends?

---

[1] Post-judgment orders denying motions to vacate are appealable as to issues raised for the first time in the post-judgment motion. *Marsh v. Milwaukee,* 104 Wis. 2d 44, 47–48, 310 N.W.2d 615 (1981); *Ver Hagen v. Gibbons,* 55 Wis. 2d 21, 25–26, 197 N.W.2d 752 (1972).

We conclude that a circuit court does not have subject matter jurisdiction in a divorce action to determine attorney fees between an attorney and a client whom the attorney continues to represent in the divorce action and to enter judgment therefor. Accordingly we reverse the order refusing to vacate that part of the divorce judgment awarding attorney fees and a mortgage lien to Attorney Miller and remand the matter to the circuit court to vacate that part of the judgment awarding fees and a mortgage lien to Attorney Miller. Our conclusion does not affect a circuit court's power to enter an order relating to attorney fees pursuant to statutory authority granted in secs. 767.23(1)(d),[2] 767.23(3),[3] and 767.262,[4]

[2]Section 767.23(1)(d) provides:

(1) Except as provided in ch. 822, in every action affecting the family, the court . . . may, during the pendency thereof, make just and reasonable temporary orders concerning . . .:
(d) . . . maintenance of the other party. This maintenance may include the expenses and attorney fees incurred by the other party in bringing or responding to the action affecting the family.

[3]Section 767.23(3)(a), Stats. 1989–90, provides:

Upon making any order for dismissal of an action affecting the family or for substitution of attorneys in an action affecting the family or for vacation of a judgment theretofore granted in any such action, the court shall prior to or in its order render and grant separate judgment in favor of any attorney who has appeared for a party to the action . . . for the amount of fees and disbursements to which the attorney . . . is, in the court's judgment, entitled and against the party responsible therefor.

[4]Section 767.262, Stats. 1989–90, provides in pertinent part:

(1) The court, after considering the financial resources of both parties, may do the following:
(a) Order either party to pay a reasonable amount for the cost of the other party of maintaining or responding to an action affecting the family and for attorney fees to either party.
(b) . . ..
(2) Any amount ordered under sub. (1) may include sums for

Stats. 1989–90.

## I.

The facts are not in dispute for purposes of this appeal. Patrice B. Stasey (now Bapst) filed for divorce on July 3, 1986. At that time, she was represented by the law firm of Flood & Lauer. On April 16, 1987, Ms. Stasey filed a motion for substitution of attorneys. Pursuant to that motion, Ms. Stasey and Flood & Lauer agreed that a judgment for $7,250, an amount less than Flood & Lauer's original bill to Ms. Stasey, would be entered against Ms. Stasey for payment of Flood & Lauer's attorney fees. The judgment was entered in this compromise amount on May 28, 1987, pursuant to sec. 767.23(3)(a), Stats. 1989–90. Ms. Stasey signed a consent for judgment lien, entitling Flood & Lauer to a lien on all assets awarded in the divorce until their attorney fees were paid in full. As of February 2, 1991, Ms. Stasey owed $3,250 on that lien.

Ms. Stasey subsequently retained Attorney Kathleen Ortman Miller. On April 29, 1987, Ms. Stasey signed an agreement with Attorney Miller for payment of attorney fees, costs, and disbursements. Ms. Stasey agreed to pay a $5,000 retainer, which would subsequently be credited against fees and costs. In addition, Attorney Miller's hourly rate was set at $125.00 and Associate Gail Arnold's hourly rate was set at $85.00. The agreement stated that a firm estimate of the maximum fee could not be given because the number of hours of work could not be estimated. Attorney Miller agreed

legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment . . ..

(3) The court may order that the amount be paid directly to the attorney or to the state or the county providing services under s. 46.25 or 49.19, who may enforce the order in its name . . ..

to inform Ms. Stasey of her work by means of a monthly statement showing her legal fees as they accrued. The agreement asked that Ms. Stasey communicate with Attorney Miller if Ms. Stasey had any question about the statement. The agreement reserved the right to Attorney Miller to terminate the attorney-client relationship for nonpayment of fees and costs. Finally, the agreement provided for a mortgage lien upon all assets awarded Ms. Stasey in the divorce action if she failed to keep current with her payments for fees and disbursements. The agreement stated:

> If you are unable to keep current with your fees and disbursements, you hereby agree that all outstanding fees and costs incurred on your behalf plus interest accruing thereon will constitute a mortgage lien upon all assets awarded to you in your divorce action. You further agree to execute all documents necessary to effectuate this lien.

Over the next 21 months, the parties engaged in extensive pre-trial motions and discovery. According to the record, Attorney Miller sent Ms. Stasey monthly statements of fees and disbursements.

The trial began on January 31, 1989, and ran for five days. On February 2, 1989, Attorney Miller elicited testimony from Ms. Stasey regarding her attorney fees, apparently for the purpose of having the court order Mr. Stasey to pay part of Ms. Stasey's attorney fees pursuant to sec. 767.262, Stats. 1989-90, set forth in the margin at note 4.

Attorney Miller established through Ms. Stasey's testimony that the outstanding bills for attorney fees, costs, and disbursements amounted to $24,068.62. (Ms. Stasey had already paid $10,000 to Attorney Miller.) Attorney Miller attempted to elicit testimony from Ms. Stasey that the fees were reasonable and necessary. The

circuit court sustained the objection of Mr. Stasey's counsel to this testimony, holding that Ms. Stasey was not competent to testify about the reasonableness of attorney fees because it was not established that she had some basis for giving an opinion. At no time did the court hear testimony from witnesses, expert or otherwise, regarding the reasonableness of Attorney Miller's fees.

Attorney Miller then turned to the issue of Ms. Stasey's liability to Attorney Miller for fees. Attorney Miller asked whether their fee agreement included the provision that "any additional amount not covered by [her] retainer would become a judgment against [her] and a lien against all assets awarded to [her]" in the divorce action. Ms. Stasey answered affirmatively. Transcript of February 2, 1989, at 4.

Attorney Miller then asked: "Mrs. Stasey, do you ask that the court order a lien against your assets to secure payment of my attorney's fees consistent with our written agreement?" Ms. Stasey responded: "I don't know how to answer that. I guess, yes. Or a lien against his estate." Transcript of February 2, 1989, at 9–10.

The trial recessed on February 7, 1989, and was scheduled to resume on May 18, 1989. On May 15, 1989, the circuit court heard Ms. Stasey's request that Attorney Miller withdraw as counsel and Attorney Miller's motion to withdraw from the case because of "Ms. Stasey's dissatisfaction [with Attorney Miller's strategy] and my lack of control over her at this time." Transcript of May 15, 1989, at 25. Ms. Stasey requested time to interview and procure another attorney and to familiarize that attorney with the files. Because it concluded that the issues had already been "thoroughly tried," the circuit court denied Attorney Miller's motion to withdraw. The circuit court presented Ms. Stasey with the

43

option of proceeding *pro se,* continuing with Attorney Miller, or finding new counsel willing to represent her when the trial resumed as scheduled on May 18. Ms. Stasey chose to continue with Attorney Miller.

The trial reconvened on May 18, 1989, and ended the next day with a finding by the circuit court that the marriage was irretrievably broken.

The circuit court heard several post-trial motions during the following months. On June 22, 1989, Attorney Miller petitioned the circuit court to update the accounting of attorney fees and presented bills that totalled $41,966.71 through the conclusion of the hearing on June 22. Attorney Miller then requested that any assets awarded to Ms. Stasey be subject to a mortgage lien as provided in the fee agreement, telling the circuit court:

> And . . . the fee agreement has been placed on record, which requires Mrs. Stasey to grant me a mortgage lien against all of the assets awarded to her in this divorce action. The court may recall Mrs. Stasey's testimony in that regard. It was a reluctant acquiescence to, yes, she had made that request and had made that agreement with me and did make that request of the court at this time.
>
> In fact, Your Honor, I do request that any assets awarded to Mrs. Stasey be subjected to the lien provided for in that fee agreement to secure payment of the fees. Transcript of June 22, 1989, at 4.

Attorney Miller continued by stating that it would be unfair to place full responsibility for the fees upon Ms. Stasey and requested contribution from Mr. Stasey directly from the proceeds awarded in the property division.

On July 21, 1989, the circuit court held a hearing to determine the specifics of the property division. Attorney Miller again asked the circuit court to enter a mort-

44

gage lien against the assets awarded to Ms. Stasey. Attorney Miller said,

> Your Honor, I would like to point out that at the conclusion of trial I requested that the Court recognize the written fee agreement of Mrs. Stasey with my office and grant a mortgage lien against assets awarded to her or otherwise provide a mechanism by which payment will be made. Transcript of July 21, 1989, at 35.

The circuit court responded,

> Well, okay. You did request that and I didn't—in pulling the other stuff together, I will just take that under advisement and write you a short decision on that because I didn't—the last time you requested I didn't understand the basis for it and now you have enlightened me . . .. Transcript of July 21, 1989, at 35.

Thereafter, on December 13 and 14, 1989, the circuit court heard argument concerning the proposed findings of fact, conclusions of law, and judgment. One of Attorney Miller's motions was for a separate judgment in her favor for attorney fees. During that hearing, Attorney Miller said, "In addition, I ask—since a judgment lien would have no effect unless Mrs. Stasey chooses to sell her residence, that the Court consider whether it would be appropriate to order any direct payments from assets awarded to Mrs. Stasey." Transcript of December 14, 1989, at 4. In response, Ms. Stasey objected to any lien and to the reasonableness of the fees, stating,

> At this time I would like to request that you not let her put a judgment against any of my assets for this estate. I would ask, or would like to imply that at this time I'm going to be filing a formal complaint with the attorney board of responsibility and after the

45

findings are finished I will be contacting the State Bar Association for attorney fee dispute and arbitration. And until their decisions are rendered I feel at this time a judgment should not be put against my estate. Transcript of December 14, 1989, at 4.

The circuit court ruled that section 97(c) of the divorce judgment, set forth below, would "stay as is," and that it did not have the authority to direct any other type of payment arrangement. Transcript of December 14, 1989, at 4. During the same hearing, the circuit court granted Attorney Miller permission to withdraw from the case upon entry of the divorce judgment. Transcript of December 14, 1989, at 6.

The circuit court entered the findings of fact, conclusions of law, and judgment of divorce on January 5, 1990. With respect to attorney fees, the circuit court attributed the high cost of the case to "overtrial" by Ms. Stasey, not Ms. Stasey's attorneys. The circuit court therefore denied Ms. Stasey's request that Mr. Stasey contribute to Ms. Stasey's attorney fees.[5]

Also included in the judgment, which was drafted by Attorney Miller, was the following provision:

97. Attorneys' Fees.

. . .

(c)   Attorney Kathleen Ortman Miller is hereby awarded a judgment against petitioner [Ms. Stasey] in the amount of $44,578.51. Said judgment shall constitute a mortgage lien against all

---

[5]The circuit court relied on *In re Marriage of Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 484, 377 N.W.2d 190 (Ct. App. 1985), in which the court of appeals held that "an innocent party who is the victim of 'overtrial' should not be burdened with the payment of extra and unnecessary attorney fees occasioned by the other party."

assets awarded to petitioner in this action to secure payment of her attorney's fees and expenses in the amount of $44,578.51.

An abridgment of the judgment containing the same provision was filed on January 19, 1990. A separate judgment for $44,578.51 in favor of Attorney Miller against Ms. Stasey was also entered on January 19, 1990.

On March 26, 1990, Attorney Miller began a foreclosure action against Ms. Stasey's home. On April 2, 1990, Attorney Miller began garnishment proceedings with respect to Ms. Stasey's individual retirement account (IRA).

Ms. Stasey retained new counsel and on May 23, 1990, filed a motion for relief from the judgment. Ms. Stasey asserted that the circuit court did not have subject matter jurisdiction over attorney fees between her and her attorney and that she should be relieved from the judgment under sec. 806.07(1)(c), (d) or (h), Stats. 1989-90.[6] By order entered August 2, 1990, the circuit court denied Ms. Stasey's motions for relief from the judgment and for a stay of the judgment pending appeal.

Ms. Stasey argues before this court that the circuit court lacked subject matter jurisdiction to determine attorney fees during the divorce action; that the circuit court lacked personal jurisdiction over Ms. Stasey for

---

[6]Section 806.07, Stats. 1989-90, provides as follows:

(1) On motion and upon such terms as are just, the court may relieve a party or legal representative from judgment, order or stipulation for the following reasons:

. . .

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

. . .

(h) Any other reasons justifying relief from the operation of the judgment.

purposes of determining attorney fees; that the judgment is void under sec. 806.07(1)(c) because of Attorney Miller's "fraud, misrepresentation, or other misconduct"; and that the judgment is void under sec. 806.07(1)(h) because the circuit court denied Ms. Stasey due process in entering a judgment and mortgage lien against her.

For the reasons set forth we conclude that a circuit court does not have subject matter jurisdiction in a divorce action to determine attorney fees between an attorney and a client whom the attorney continues to represent in the divorce action and to enter judgment therefor. Accordingly we reverse the order of the circuit court refusing to vacate that part of the divorce judgment awarding attorney fees and a mortgage lien to Attorney Miller.[7]

## II.

■ Ms. Stasey argues that the circuit court had no subject matter jurisdiction to determine the reasonableness of the attorney fees or enter judgment against her for the amount of the fees. While the constitution and statutes grant broad jurisdiction to the circuit courts of this state, this court has, in numerous cases, recognized that the "jurisdiction [of a circuit court] in divorce actions is entirely dependent on legislative authority." *Groh v. Groh*, 110 Wis. 2d 117, 122, 327 N.W.2d 655 (1983). See also *Dovi v. Dovi*, 245 Wis. 50, 53-55, 13 N.W.2d 585 (1944).

---

[7]Because we conclude that the circuit court does not have subject matter jurisdiction, we need not decide the issues of personal jurisdiction and due process.

We must therefore first look to the statutes governing the jurisdiction of a circuit court hearing a divorce action. Section 767.01, Stats. 1989–90, provides that circuit courts "have jurisdiction of all *actions affecting the family* and have authority to do all acts and things necessary and proper in such actions . . .." (Emphasis added.) Section 767.01(1) states in full:

> The circuit courts have jurisdiction of all actions affecting the family and have authority to do all acts and things necessary and proper in such actions and to carry their orders and judgments into execution as prescribed in this chapter. All actions affecting the family shall be commenced and conducted and the orders and judgments enforced according to these statutes in respect to actions in circuit court, as far as applicable, except as provided in this chapter.

The phrase "actions affecting the family" is defined in sec. 767.02 which lists 12 proceedings that constitute actions affecting the family.[8] Awarding attorney fees to

---

[8]Section 767.02(1) provides as follows:

**(1)** Actions affecting the family are:

(a) To affirm marriage.

(b) Annulment.

(c) Divorce.

(d) Legal separation (formerly divorce from bed and board).

(e) Custody.

(f) For child support, including an action under s. 767.65.

(g) For maintenance provisions.

(h) For property division.

(i) To enforce or modify a judgment or order in an action affecting the family granted in this state or elsewhere.

(j) For periodic family support payments.

an attorney who represents a party to a divorce is not on the list.

Several statutes expressly deal with attorney fees. Section 767.23(1)(d), set forth at note 2, permits a circuit court hearing an action affecting the family to enter temporary orders during the proceeding requiring the maintenance of one party by the other. Maintenance may include the payment of attorney fees.

Section 767.23(3)(a), Stats. 1989–90, set forth in the margin at note 3, expressly authorizes a circuit court in an action affecting the family to grant separate judgment in favor of any attorney who has represented a party to the action for the amount of fees and disbursements. This power is limited, however, to the circuit court's "making any order for *dismissal* of an action affecting the family or for *substitution* of attorneys in an action affecting the family or for *vacation* of a judgment theretofore granted in any such action." (Emphasis added.) Thus, sec. 767.23(3)(a) apparently protects attorneys only when either the court or the attorney will no longer be connected with the action affecting the family. *O'Connor v. O'Connor,* 48 Wis. 2d 535, 540, 180 N.W.2d 735 (1970).

Section 767.262, set forth in the margin at note 4, permits a circuit court to enter final orders requiring one party in a divorce action to contribute to the other party's attorney fees.

The parties agree that the statutes do not expressly grant circuit courts hearing cases affecting the family subject matter jurisdiction over attorney fees between an attorney and a client whom the attorney continues to represent in the divorce action and that secs.

(k)  Concerning periods of physical placement or visitation rights to children.

(l)  To determine paternity.

767.23(1)(d), 767.23(3), and 767.262, Stats. 1989–90, are not applicable to this case.

Attorney Miller, relying on the Wisconsin constitution[9] and secs. 753.03[10] and 767.01, Stats. 1989–90,[11] argues that it would be absurd for a circuit court hearing a divorce, an action affecting the family, not to have all the powers of a court of general jurisdiction, except when the exercise of those powers might extend the circuit court's divorce jurisdiction beyond the limits set by the legislature. Attorney Miller argues that sec. 767.01, which provides that in an action affecting the family the circuit court has authority "to do all acts and things necessary and proper" in such actions, includes the

[9]Article VII, sec. 7, Wis. Const., provides:

Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may prescribe by law. The circuit court may issue all writs necessary in aid of its jurisdiction.

[10]Section 753.03, Stats. 1989–90, states:

**753.03 Jurisdiction of circuit courts.** The circuit courts have the general jurisdiction prescribed for them by article VII of the constitution and have power to issue all writs, process and commissions provided in article VII of the constitution or by the statutes, or which may be necessary to the due execution of the powers vested in them. The circuit courts have power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court; and they have all the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carry into effect their judgments, orders and other determinations, subject to review by the court of appeals or the supreme court as provided by law. The courts and the judges thereof have power to award all such writs, process and commissions, throughout the state, returnable in the proper county.

[11]Section 767.01(1), Stats. 1989–90, is set forth above.

power to determine attorney fees arising out of services rendered in the divorce. Attorney Miller cites no cases directly supporting these arguments. Our cases, like *Groh,* tend to take a more limited view of the powers of a circuit court in an action affecting the family than Attorney Miller urges.

The authority limiting the subject matter jurisdiction of a divorce court to that expressly authorized by the legislature must be weighed against several cases that state that a circuit court has jurisdiction to determine fees between a party and that party's attorney relating to services rendered in that lawsuit, including divorce actions.

For example, in *Estate of Boyle v. Wickhem,* 134 Wis. 2d 214, 397 N.W.2d 124 (Ct. App. 1986), the court of appeals held that a circuit court hearing a personal injury lawsuit did not have jurisdiction to resolve a fee dispute arising solely between attorneys who jointly represented a party to the suit. 134 Wis. 2d at 222.[12] The court of appeals declared, however, in dicta, that a circuit court does possess inherent power to resolve a "direct attorney-client conflict regarding the attorney's right to a portion of a judgment." 134 Wis. 2d at 220.

To support this dicta, the court of appeals in *Boyle* relied on *Freyer v. Mutual Benefit Health & Accident Ass'n,* 45 Wis. 2d 106, 172 N.W.2d 338 (1969). The court

---

[12]In *Boyle,* the plaintiff had retained two attorneys to prosecute a personal injury action; one attorney died before the trial was concluded. The parties settled the lawsuit and everyone agreed about the amount of the plaintiff's total legal fees. The plaintiff's lawyer and the estate of the plaintiff's deceased lawyer disagreed, however, about the division of the fees between them. The plaintiff's lawyer petitioned the circuit court hearing the underlying personal injury dispute to resolve the fee dispute between the attorneys.

of appeals in *Boyle* broadly interpreted *Freyer* as "impliedly holding" that "the trial court had jurisdiction to resolve fee disputes between a client and the attorney arising out of contemporaneous litigation." *Estate of Boyle,* 134 Wis. 2d at 220–21.

*Freyer* involved sec. 256.36, Stats. 1967, the precursor of sec. 757.36, Stats. 1989–90, which gives an attorney a lien securing fees from the proceeds of a tort or unliquidated damages contract action when the attorney and client contract for a lien.[13] In *Freyer,* the party and

---

[13]Sections 757.36–757.38, Stats. 1989–90, provide as follows:

**757.36 Lien on proceeds of action to enforce cause of action.** Any person having or claiming a right of action, sounding in tort or for unliquidated damages on contract, may contract with any attorney to prosecute the action and give the attorney a lien upon the cause of action and upon the proceeds or damages derived in any action brought for the enforcement of the cause of action, as security for fees in the conduct of the litigation; when such agreement is made and notice thereof given to the opposite party or his or her attorney, no settlement or adjustment of the action may be valid as against the liens so created, provided the agreement for fees is fair and reasonable. This section shall not be construed as changing the law in respect to champertous contracts.

**757.37 When action settled by parties, what proof to enforce lien.** If any such cause of action is settled by the parties thereto after judgment has been procured without notice to the attorney claiming the lien, the lien may be enforced and it shall only be required to prove the facts of the agreement by which the lien was given, notice to the opposite party or his or her attorney and the rendition of the judgment, and if any such settlement of the cause of action is had or effected before judgment therein, then it shall only be necessary to enforce the lien to prove the agreement creating the same, notice to the opposite party or his or her attorney and the amount for which the case was settled, which shall be the basis for the lien and it shall not be necessary to prove up the original cause of action in order to enforce the lien and suit.

**757.38 Consent of attorney in settlement of actions for personal injuries.** No settlement or adjustment of any action which shall have been commenced to recover damages for any personal

his attorney had an agreement which the circuit court interpreted as creating a valid statutory lien on the proceeds of the settlement of the tort case. This court implicitly concluded that a circuit court could enter an order disbursing funds to pay the attorney fees according to the agreement but expressly concluded only that the circuit court could not enter an order disbursing funds arising from settlement of that lawsuit to pay attorney fees for work on other cases in the absence of a specific agreement so providing. 45 Wis. 2d at 110-11.

*Freyer* is distinguishable from the case at bar. *Freyer* involved a statutory lien in a personal injury case. *Freyer* does not speak to the issue of the subject matter jurisdiction of a circuit court in a divorce action over the fee owed an attorney by a client.

*Herro, McAndrews & Porter v. Gerhardt,* 62 Wis. 2d 179, 214 N.W.2d 401 (1974), may also be viewed as supporting the argument that a circuit court has subject matter jurisdiction in a divorce action to determine the fee owed an attorney by a client. In *Herro,* however, an attorney brought a *separate* action to recover fees earned in a divorce action. The supreme court wrote that circuit courts may exercise their inherent power[14] to determine the reasonableness of attorney's fees either "in a subse-

injury or for the death as a result of any personal injury in which an attorney shall have appeared for the person or persons having or claiming a right of action for such injury or death shall be valid, unless consented to in writing by such attorney or by an order of the court in which said action is brought approving of such settlement or adjustment.

[14]The inherent power referred to in *Boyle,* 134 Wis. 2d at 220, 222, and *Herro* is a court's power to determine the reasonableness of the fees of an attorney, an officer of the court. Although a court has this inherent power over fees, it may not have jurisdiction in a particular case over the dispute about attorney fees. See, *e.g., Boyle,* 134 Wis. 2d at 222.

54

quent suit on that contract for attorney's services" or "during the action from which the charges for attorney's fees emanates." 62 Wis. 2d at 182. The court cited *Hennen v. Hennen,* 53 Wis. 2d 600, 193 N.W.2d 717 (1972), as support for its dicta that the divorce court can determine a party's attorney fees during the divorce action. *Hennen,* however, involved a circuit court's determining the amount of the contribution to be paid by a defendant in a divorce action to the spouse's divorce lawyer, not the defendant's own lawyer.[15] Therefore the dicta in *Herro* relies on a case that does not support the view that a circuit court has subject matter jurisdiction in a divorce action to determine the fee owed an attorney by a client whom the attorney continues to represent in the divorce action.

In all, no case analyzes the issue of a circuit court's subject matter jurisdiction to determine in a divorce action the fee owed an attorney by a client whom the attorney continues to represent in the divorce action. No case or statute directly decides or persuasively supports the view that a divorce court has subject matter jurisdiction over attorney fees between an attorney and a client whom the attorney continues to represent in the divorce action.

Nevertheless, good reasons exist to support the conclusion that the legislature intended a divorce court to decide attorney fees. The divorce court has insight about the work of the attorney, the lawyering needs of the case, and the human and economic factors affecting reason-

---

[15]In determining whether to order contribution, a circuit court first establishes the reasonableness of the total attorney fee. *Hennen,* 53 Wis. 2d at 606. The determination of the reasonableness of the fee for purposes of contribution by the opposing party may be different than a determination of reasonableness for purposes of deciding the fee between attorney and client.

able fees in the case. The circuit court in this case explained the advantages of its resolving the attorney fee issue within the divorce action as follows:

> The trial judge has a superior vantage point to get the feel of the case and weigh human and economic factors. This is especially true in divorce litigation where the attorney's fees and requested contribution toward those fees often outstrip marital assets. Next, the decision of the trial court as to attorney's fees is essential to the court's efficient exercise of its jurisdiction. It is obvious that a court's decision on attorney's fees in a divorce case promotes finality . . . and efficiency and economy in the administration of justice. To have the disputes [between attorney and client] heard in another forum would amount to a retrial of what the court has already determined to be an overly litigated divorce matter. The inherent power . . . also gives the courts the ability to control attorneys' conduct, not only *vis-a-vis* their own clients, but also toward opposing counsel and their client. Decision of June 11, 1990, at 2.[16]

We are more persuaded, however, by arguments that support the conclusion that the legislature did not intend a circuit court to determine the fee owed an attorney by a client during a divorce action. Indeed Attorney Miller does not ask us to hold that the divorce court should exercise jurisdiction to resolve attorney fees and liens for attorney fees as part of every divorce judgment; she asks for a limited holding. At oral argument counsel for Attorney Miller asked us to hold that a divorce court

---

[16]Other jurisdictions have created a strong preference that fee disputes be resolved in the forum hearing the underlying controversy. See, *e.g., In re Warner's Estate,* 35 So. 2d 296, 298–99 (Fla. 1948); *Kozich v. Kozich,* 501 So. 2d 1386, 1387–88 (Fla. Dist. Ct. App. 1987) (divorce action).

should resolve a fee dispute between a lawyer and a divorce client during the divorce action only in the following limited circumstances: the client has asked the attorney to withdraw as counsel; the attorney has sought the circuit court's permission to withdraw as counsel; the opposing party in the divorce action objects to an adjournment or continuance of the trial; the circuit court concludes that the fee dispute arose from an "overtrial" caused by the client; the circuit court denies the attorney's motion to withdraw unless the client proceeds either *pro se* or with newly retained counsel who would proceed with the trial as scheduled; and the attorney continues to represent the client because the client does not wish to proceed *pro se* and cannot obtain new counsel under the conditions set by the circuit court. We are not persuaded that the legislature intended the circuit court to exercise subject matter jurisdiction over a fee dispute even under these limited circumstances.

■

Had the legislature intended to provide an opportunity for divorce attorneys to secure their fees by obtaining a mortgage or judgment lien as part of a divorce judgment, it would have expressly conferred that power upon the divorce court. As we previously stated, no statute supports the conclusion that a circuit court, as part of a divorce action, can determine the fees a lawyer may charge a client in the divorce or can enter a judgment for the amount of the fees and order that the attorney fee constitutes a lien on the client's property. Instead the legislature provided that a divorce court could determine fees only in specified situations, none applicable to the case at bar. No case authority overcomes the absence of an express statutory grant of jurisdiction to the circuit court.

If we interpret the statutes as permitting an attorney who is still representing a client to litigate his or her fees with the client in the pending divorce action, the legislature will have created within the divorce action a separate lawsuit between the attorney and client about fees. If an attorney is allowed to ask a divorce court to determine fees while the attorney is still representing the client, the client and attorney may become adversaries. This court has written that an attorney should not have a direct interest in a client's pending suit; the "attorney should not be a party to it and advocate too." *O'Connor v. O'Connor,* 48 Wis. 2d 535, 540, 180 N.W.2d 735 (1970).

A client's reliance on an attorney may often make the client reluctant to review the fees and challenge them if the attorney were to ask the circuit court to determine fees during a divorce action. Furthermore, if the client disputes the fee, the client would be entitled to a meaningful opportunity to be heard, including the right to be represented by an attorney who does not have an interest which is adverse to the client.

We believe this case illustrates the danger the legislature intended to avoid. As Attorney Miller's brief states, under the circumstances of this case a fee dispute was virtually guaranteed. Ms. Stasey told the circuit court hearing the divorce that she objected to the attorney fees. Nevertheless, prior to granting the judgment in favor of Attorney Miller, the circuit court did not give Ms. Stasey adequate notice to prepare herself or retain counsel for a hearing on fees. The circuit court did not afford Ms. Stasey an opportunity to examine the files and papers generated in her behalf to support her claim that the fees were excessive. Nor was Ms. Stasey given

the opportunity to cross-examine Attorney Miller or otherwise challenge Attorney Miller's bills. When deprivation of property is at issue, as it is in this case, minimal due process requires the state to afford a litigant a meaningful opportunity to present a defense. *Boddie v. Connecticut,* 401 U.S. 371, 377-78 (1971). In sum, Ms. Stasey was not given an opportunity to present evidence or argument about the retainer contract, the reasonableness of the attorney fees, the existence of a lien, the nature of the lien, the enforcement of the lien, or the property affected by the lien. Thus, even if the circuit court had subject matter jurisdiction over the attorney fee dispute in this case that part of the judgment relating to Ms. Stasey's attorney fees might very well be void because Ms. Stasey was not afforded minimal due process.[17]

Upon examining the statutes and cases and the public policy underlying the statutes, we conclude that the legislature intended that a circuit court hearing a divorce action not determine fees between an attorney and a client whom the attorney continues to represent in the divorce action. The legislature apparently believed that the divorce proceeding would be concluded more promptly and efficiently without the circuit court deciding the extraneous issue of attorney fees between attorney and client, that an adversarial proceeding between

[17]Despite sec. 481.13, Minn. Stats., permitting an attorney to establish the amount of fees and the attorney's lien in the lawsuit in which the fees are generated, in *Boline v. Doty,* 345 N.W.2d 285 (Minn. Ct. App. 1984), and *Gaughan v. Gaughan,* 450 N.W.2d 338, 342-43 (Minn. Ct. App. 1990), the Minnesota court of appeals reversed that part of a judgment awarding attorney fees on the ground that the client did not receive an adequate opportunity to contest the fees.

attorney and client should be avoided within the divorce court, and that the client would more easily be accorded due process guarantees if the attorney brought a separate cause of action against the client for attorney fees.

Finally, Attorney Miller argues that she has a contractual right to a lien on the property awarded Ms. Stasey as a result of her efforts as attorney. In the instant case the retainer agreement specifically provides that Attorney Miller shall have a lien on "all assets awarded to you in your divorce action."

■ At common law an attorney had what was known as "a charging lien" for services to secure compensation. The lien was not dependent on the attorney's possession of property belonging to the client but was founded on considerations of fairness; an attorney's fees for services in a particular suit should be secured by the judgement or recovery in that suit. *Stanley v. Bouck,* 107 Wis. 225, 83 N.W. 298 (1900); *Rice v. Garnhart,* 35 Wis. 282 (1874); *Howard v. Osceola,* 22 Wis. 433, 437 (1868).

This court has recognized the existence, independent of statute,[18] of common law charging liens that secure an attorney's payment from the proceeds of a judgment. *Wurtzinger v. Jacobs,* 33 Wis. 2d 703, 711–12, 148 N.W.2d 86 (1967) (by operation of law, attorney possesses equitable lien for services and disbursements once a judgment in contract or tort action is recovered); *Goldman v. Home Mut. Ins. Co.,* 22 Wis. 2d 334, 341–42, 126 N.W.2d 1 (1964) (existence of statutory lien provision, currently secs. 757.36–.38, Stats., does not preclude continued existence of common law liens); *Liberty v. Liberty,* 226 Wis. 136, 139, 276 N.W. 86 (1937) (attorney

---

[18]For Wisconsin's statutory lien provision, see secs. 757.36–.38, Stats. 1989–90, set forth in the margin at note 13. None of the attorney lien statutes governs this case.

brought garnishment action to enforce attorney's lien). See also *Matter of Richland Bldg. Sys., Inc.*, 40 B.R. 156, 157–58 (Bankr. W.D. Wis. 1984) (concluding that an equitable lien exists in Wisconsin law).

While Wisconsin cases discuss common law and statutory attorney liens, they do not clarify the existence, nature, and means of enforcement of a common law attorney lien in a divorce action. We have concluded that that part of the judgment awarding attorney fees is void. We further conclude that resolution of any issue relating to an attorney lien should await resolution of the fee issue.

For the reasons set forth, we conclude that a circuit court does not have subject matter jurisdiction in a divorce action to determine attorney fees between an attorney and a client whom the attorney continues to represent in the divorce action and to enter judgment therefor. Accordingly we reverse the order of the circuit court refusing to vacate that part of the divorce judgment awarding attorney fees and a mortgage lien to Attorney Miller and remand the matter to the circuit court to vacate that part of the judgment awarding fees and a mortgage lien to Attorney Miller.

*By the Court.*—The order of the circuit court is reversed and the cause remanded.

CHIEF JUSTICE HEFFERNAN, took no part.