In re the Attorney Fees in In re the Marriage of
Elizabeth J. Kohl v. Richard H. Zeitlin

Elizabeth J. Kohl, Appellant,

v.

DeWitt Ross & Stevens, Respondent.

Court of Appeals

No. 2004AP328. Submitted on briefs August 5, 2004.
—Decided August 11, 2005.

2005 WI App 196

(Also reported in 704 N.W.2d 586.)

On behalf of the appellant, the cause was submitted on the briefs of *Richard J. Auerbach, Auerbach & Porter*, Madison.

On behalf of the respondent, the cause was submitted on the brief of *Scott K. Petersen, DeWitt Ross & Stevens*, S.C., Madison.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. Elizabeth Kohl appeals a judgment awarding attorney fees to her former counsel in this divorce action. She contends the circuit court lacked authority to enter the judgment; she was denied a reasonable opportunity to contest the amount of fees owed; the record does not support the court's determination on the amount owed; and the court lacked authority to freeze her investment account pending resolution of the fee issue. We conclude: (1) the court had authority under Wis. Stat. § 767.23(3)(a)[1] to enter a judgment in favor of Kohl's former counsel and against Kohl for the fees owed; (2) the court did not erroneously exercise its discretion by not giving Kohl more time to contest the fees and she had a reasonable

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

opportunity to contest the fees; (3) Kohl has not shown the amount of fees awarded was error; and (4) the court had the authority to enter the freeze order under § 767.23(1)(h). We therefore affirm. We also deny the law firm's request for attorney fees under WIS. STAT. Rule 809.25(3).

## BACKGROUND

¶ 2. Kohl and her former husband, Richard Zeitlin, jointly initiated this divorce action in October 2001. In April 2002, the court entered an order, pursuant to stipulation, substituting Nancy Wettersten of the firm of DeWitt Ross & Stevens (DeWitt) for the attorney who had initially represented Kohl. A trial was held on the financial issues in October 2002, with the issues of custody and physical placement reserved for trial in April 2003. On December 17, 2002, the court entered a judgment of divorce, which granted the divorce and resolved the financial issues.

¶ 3. On December 30, 2002, Wettersten and DeWitt moved to withdraw as counsel for Kohl and for a judgment against Kohl in the amount of $14,768.31 for attorney fees. In an accompanying affidavit, Wettersten averred that she and Kohl had disagreements on a number of issues; Kohl had informed Wettersten she intended to find another attorney; Wettersten had concluded that her communication with Kohl had become so dysfunctional she needed to withdraw as Kohl's counsel; Kohl's outstanding balance for fees was $14,768.31; and Kohl had informed her she did not intend to pay it.

¶ 4. At the first hearing on this motion, Kohl, appearing pro se, did not object to Wettersten's withdrawal, but she did object to the attorney fees, contend-

294

ing that Wettersten had billed her for work she had not performed. The court granted the motion to withdraw, concluded that it had authority to consider the matter of attorney fees, and scheduled an evidentiary hearing on the fees.

¶ 5. Subsequently, at Kohl's request, the evidentiary hearing on fees was postponed until after the custody and placement issues were decided. In view of that postponement, DeWitt requested that the court enter an order prohibiting Kohl from encumbering or transferring any marital assets until the motion for attorney fees was resolved. Kohl objected to the entry of such an order. At the hearing on this issue in February 2003, Kohl appeared pro se. The court agreed with DeWitt's position that it had the authority to enter such an order under WIS. STAT. § 767.23(1)(h). The court entered an order prohibiting Kohl from reducing the assets in a particular investment account below $15,000 pending resolution of the motion for a judgment on attorney fees. During the course of this hearing, Kohl indicated to the court that she had been trying to find an attorney to represent her and hoped to have one soon.

¶ 6. In April 2003, the parties appeared in court with an agreement on custody and physical placement. Kohl was represented by new counsel, who had been involved in negotiating this agreement on her behalf.[2] The court adopted the agreement as its order, so no trial on those issues took place.

¶ 7. The hearing on the motion for a judgment on attorney fees took place in October 2003, after post-

---

[2] On the minutes sheet, Kohl's new attorney, Richard Auerbach, is identified as "GAL," but he was not the guardian ad litem in this case, and it is clear from the transcript that he was representing Kohl.

ponements requested by both Kohl and Wettersten. The minutes reflect that the hearing was to begin at 8:30 a.m. and the notice stated it was scheduled for ninety minutes.[3] Kohl appeared pro se. Zeitlin was present in the courtroom and Kohl objected to his presence. The court asked him to leave because he was not a party to the motion or a witness and there was a restraining order against him, in relation to Kohl, in another case. Zeitlin left the courtroom at 8:53 a.m. and Kohl, who had been waiting in the court's chambers, entered the courtroom at 8:54 a.m. Just before Wettersten began testifying, the court stated that the proceeding "[was] getting a bit of a late start," there was another matter scheduled for 10:30 a.m., and the parties were to confine their presentations to the one and one-half hour time period.

¶ 8. Kohl cross-examined Wettersten, presented exhibits, and testified herself. At the conclusion of the hearing, the court granted the motion and entered an order for judgment and judgment in the amount of $15,920.96 in favor of DeWitt.

## ANALYSIS

¶ 9. On appeal, Kohl argues that the court lacked authority to enter the judgment for attorney fees because WIS. STAT. § 767.23(3)(a) authorizes a court to do so only if another attorney replaces the withdrawing attorney at the time the attorney withdraws, and that did not happen here. She also argues that she was denied a reasonable opportunity to dispute the fee request, the record does not support portions of the

---

[3] The notice is not in the record, but the court during the hearing stated that the notice said the hearing was scheduled for ninety minutes.

court's determination on the amount of fees, and the court lacked the authority to freeze her investment account pending a determination of the fees owed. DeWitt responds that § 767.23(3)(a) authorizes the court to enter a judgment for attorney fees for an attorney who is permitted by the court to withdraw even if no other attorney is substituted. DeWitt also asserts that Kohl had a reasonable opportunity to contest the amount of fees, the record supports the court's determination, and the issue of the court's authority to freeze the investment account is now moot. Finally, DeWitt requests attorney fees for the appeal on the ground that it is frivolous.

## I. Court's Authority Under WIS. STAT. § 767.23(3)(a)

¶ 10. WISCONSIN STAT. § 767.23(3)(a) provides:

> Upon making any order for dismissal of an action affecting the family or for substitution of attorneys in an action affecting the family or for vacation of a judgment theretofore granted in any such action, the court shall prior to or in its order render and grant separate judgment in favor of any attorney who has appeared for a party to the action and in favor of any guardian ad litem for a party or a child for the amount of fees and disbursements to which the attorney or guardian ad litem is, in the court's judgment, entitled and against the party responsible therefor.

¶ 11. The parties' dispute centers on the proper construction of "any order . . . for substitution of attorneys . . . ." The construction of a statute presents a question of law, which we review de novo. *Fox v. Catholic Knights Ins. Soc.*, 2003 WI 87, ¶ 19, 263 Wis. 2d 207, 665 N.W.2d 181.

¶ 12. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably, so as to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, there is a plain, clear, statutory meaning then we apply this meaning. *Id.*, ¶ 46.

¶ 13. Kohl argues that the common meaning of "substitution of attorneys" is that one attorney takes over for another at the same time that the first attorney withdraws. As we understand Kohl's argument, even though Kohl did retain another attorney after the court permitted Wettersten to withdraw, that did not happen at the same time as Wettersten's withdrawal, and, in the interim, Kohl proceeded pro se. Therefore, according to Kohl, there was no substitution of attorneys.

¶ 14. While it may be that Kohl's construction gives the term "substitution of attorneys" its common meaning when the term is read in isolation, her construction is not reasonable when the term is considered in context and in light of the purpose of the paragraph. The manifest purpose of Wis. Stat. § 767.23(3)(a) is to provide an expeditious procedure for determining the amount of fees that attorneys in actions affecting the

298

family (as well as guardians ad litem) are owed in the three identified situations. The legislature has evidently made the policy decision that in these three situations there should be a procedure to facilitate the prompt determination and payment of fees owed.

¶ 15. The result of Kohl's construction is unreasonable because it ties an attorney's ability to obtain a judgment for attorney fees owed him or her to events wholly unrelated to any discernible purpose of the statute. Whether a client has another attorney ready to step in as soon as the first attorney withdraws, as opposed to proceeding pro se for a short time, as here, or for the entire action remaining, has no rational relationship to whether the first attorney should have available to him or her this expeditious manner of obtaining a judgment for attorney fees owed. Instead, which of those events occurs is within the client's control, or, perhaps, within the control of market forces (that is, availability and cost of another attorney); it is certainly not within the control of the withdrawing attorney. In addition, the benefits of this procedure to the withdrawing attorney, as well as any burden or benefit it may have for the client, is not affected by whether another attorney takes over immediately, sometime later, or not at all.

¶ 16. Kohl argues that there is a distinction between "substitution of attorneys" and an attorney's withdrawal in that the former requires the consent of the client while the latter sometimes occurs without the client's consent. However, this distinction does not provide a reasonable basis for Kohl's construction. The "consent" she refers to is the new attorney's representation. Obviously, no new attorney replaces a withdrawing attorney without the consent of the client. However, Wis. Stat. § 767.23(3)(a) is not addressed to the new

attorney. As for the withdrawal of an attorney, that may be with or without the client's consent; and whether the client did or did not consent has no apparent relationship to whether the client will decide to obtain another attorney or proceed pro se upon the attorney's withdrawal.

¶ 17. The facts of this case provide an illustration of the arbitrary result of Kohl's construction. The record shows that Kohl did not want Wettersten to continue to represent her and made that decision before she had another attorney—unlike the sequence of events that occurred when Wettersten replaced Kohl's first attorney. Kohl made efforts to find another attorney to replace Wettersten and was ultimately, though not immediately, successful. Under Kohl's construction, had she not told Wettersten she wanted her to withdraw until after she found another attorney, the court would have had the authority to enter the judgment it did.

¶ 18. Kohl argues that *Kotecki & Radtke, S.C. v. Johnson*, 192 Wis. 2d 429, 441, 531 N.W.2d 606 (Ct. App. 1995), supports her construction of Wis. Stat. § 767.23(3)(a). In *Kotecki*, the issue was whether the circuit court correctly dismissed a separate action initiated by a law firm to collect unpaid fees from a former client in a divorce action. The circuit court concluded that the attorney had to seek a judgment under § 767.23(3)(a) when he moved to withdraw and was therefore barred from initiating a separate action. We disagreed. We concluded "there is nothing in § 763.23(3)(a), Stats., that gives a circuit court sitting in a divorce action 'precedence' over other courts to resolve a fee dispute such as the one presented to us in the principle case." *Id.* at 441–42. Accordingly, we held the attorney could properly bring a separate action for fees. *Id.* at 442.

¶ 19. The particular language in *Kotecki* on which Kohl relies is language referencing the supreme court's in decision in *Stasey v. Miller*, 168 Wis. 2d 37, 483 N.W.2d 221 (1992):

> Thus, the supreme court [in *Stasey*] strictly construed § 767.23(3)(a), Stats., to apply to those situations expressly set forth in the statute, i.e., orders for "dismissal of action affecting the family," "substitution of attorneys in an action affecting the family," and "vacation of a judgment theretofore granted in any such action."

*Kotecki*, 192 Wis. 2d at 441.

¶ 20. However, the supreme court in *Stasey* did not construe Wis. Stat. § 767.23(3)(a), because the parties there agreed that subsec. (3)(a)—as well as the other sections in Wis. Stat. ch. 767 expressly addressing fees—did not apply to the situation where the attorney continued to represent the client. *Stasey*, 168 Wis. 2d at 50–51. Instead, the attorney in *Stasey* was asking the supreme court to rule that, notwithstanding the lack of statutory authority, the circuit court presiding over the divorce action has the authority to resolve a fee dispute between the client and the attorney still representing her in certain limited circumstances. *Id.* at 56–57.[4] The supreme court declined to do so, concluding that the

---

[4] The limited circumstances identified by the attorney, which tracked the facts of that case, were:

> the client has asked the attorney to withdraw as counsel; the attorney has sought the circuit court's permission to withdraw as counsel; the opposing party in the divorce action objects to an adjournment or continuance of the trial; the circuit court concludes that the fee dispute arose from an "overtrial" caused by the client; the circuit court denies the attorney's motion to withdraw unless the client proceeds either *pro se* or with newly retained counsel who would proceed with the trial as scheduled; and the attorney continues to represent the client because the client does

301

legislature did not intend the circuit court to have that authority. The supreme court relied on the absence of express statutory authorization, the absence of case law support, and the ethical problems for the attorney and disadvantages to the client if the court were to resolve a fee dispute while the client was still being represented by the attorney in the divorce action. *Id.* at 57–59.

¶ 21. When read in the context of *Stasey*, the quotation from *Kotecki* on which Kohl relies is a statement of the established principle that a divorce court's power is limited to what is set forth in the statutes, a principle that was fundamental to the *Stasey* court's analysis. *See Stasey*, 168 Wis. 2d at 48. This principle, of course, also applies in this case. However, it does not determine the outcome because we must nonetheless construe Wis. Stat. § 767.23(3)(a) according to the principles of statutory construction we have cited above in paragraph 12. As Kohl recognizes in her reply brief, because neither party in *Kotecki* attached any significance to withdrawal from representing a client as opposed to "terminating . . . representation via a substitution of counsel," we did not address this issue.

¶ 22. As noted above, the *Stasey* court also did not address this issue, because the attorney there was still representing the client. However, in its brief reference to Wis. Stat. § 767.23(3)(a), the *Stasey* court described it as "apparently protect[ing] attorneys only when either the court or the attorney will no longer be connected with the action affecting the family. *O'Connor v. O'Connor*, 48 Wis. 2d 535, 540, 180 N.W.2d 735 (1970)." *Stasey*, 168 Wis. 2d at 50. This characterization is

not wish to proceed *pro se* and cannot obtain new counsel under the conditions set by the circuit court.

*Stasey v. Miller*, 168 Wis. 2d 37, 57, 483 N.W.2d 221 (1992).

consistent with construing "substitution of attorneys" to mean the withdrawal of an attorney whether or not another attorney immediately takes over, does so at some later time, or not at all. The critical factor is that the attorney whose fees the court will be adjudicating is no longer representing the client.

¶ 23. We conclude the only reasonable meaning of WIS. STAT. § 767.23(3)(a) is that it gives the court in an action affecting the family the authority to enter a judgment for the fees owed by the client to an attorney who is permitted by order of the court to withdraw, regardless when or if the client retains another attorney to replace the withdrawing attorney in that action. Accordingly, we agree with the circuit court that it had the authority to grant the motion for a judgment of the fees Kohl owed DeWitt.[5]

---

[5] Kohl also argues that we should construe the statute as she proposes because, she asserts, if the fees are allowed in this case, it will have the effect of depriving her of her constitutional right to a jury trial in the fee dispute with her former attorney, and we should avoid an interpretation that causes the statute to become unconstitutional. Kohl does not explain why the statute would be unconstitutional as applied to her, but not unconstitutional if there were a "substitution of attorneys" as she construes that term; and she does not, in any event, sufficiently develop the constitutional argument. Her argument on this issue consists of the following:

> Strict construction is appropriate, as § 767.23(3)(a), Stats., operates to preclude a dissatisfied client from exercising her right to a trial by jury. In an ordinary fee dispute between an attorney and client, a lawsuit is filed, with each side having the right to civil discovery, the right to a trial by jury, the right to substitution of judge, and other similar procedural rights. In a fee dispute between a party in a divorce action and her own attorney, no jury trial is permitted, and it is questionable whether civil discovery

## II. Opportunity to be Heard

¶ 24. Kohl next argues that the evidentiary hearing was not long enough, and she was therefore denied a reasonable opportunity to dispute the fee request. Kohl points out that when the parties first discussed scheduling the evidentiary hearing with the court, they both said one day would be needed; the court appeared to accept that length, she asserts, but the notices allotted only ninety minutes. Kohl also points out that the hearing started late because of her husband's presence in the courtroom, and she asserts this unfairly reduced her time.

methods are available (can the attorney serve her own client with interrogatories or be deposed within the aegis of the family case?). Because § 767.23(3)(a), Stats., operates to deny an aggrieved client her right to jury, and because our constitution provides that *"[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy . . .,"* Article I, § 5, *Wisconsin Constitution,* this Court should not extend the scope of § 767.23(3)(a), Stats., to an attorney's unilateral withdrawal.[1]

---

[1]One could argue that § 767.23(3)(a), Stats., is unconstitutional in light of the fact that an attorney's right to be compensated is a contractual matter, contracts are matters of law, not equity, and the cited constitutional provision precludes a denial of a jury trial in cases at law. Because constitutional issues are reached only if necessary, and because this case involves a "withdrawal" and not one of the expressed bases for invocation of § 767.23(3)(a), Stats., we point out the concern solely to support the use of a narrow construction of this statute.

Unlike the dissent, we do not consider this a sufficient development of the argument that the statute as applied to her—or in general—is unconstitutional. We therefore do not address it further. *See Dumas v. State,* 90 Wis. 2d 518, 523, 280 N.W.2d 310 (Ct. App. 1979).

¶ 25. As Kohl recognizes, a court has the discretion to control its calendar and to decide how much time to allot to particular matters. *See Carlson Heating, Inc. v. Onchuck*, 104 Wis. 2d 175, 180–81, 311 N.W.2d 673 (Ct. App. 1981) ("Every court has inherent power, exercisable in its sound discretion, consistent within the constitution and statutes, to control the disposition of [cases] on its docket with economy of time and effort."). We affirm a court's exercise of discretion in this regard if it acts reasonably. *Id.* We conclude the court acted reasonably in not allowing Kohl more time for a number of reasons.

¶ 26. First, we do not agree with Kohl's argument that ninety minutes is, as a matter of law, an unreasonable length of time for a hearing on the dispute over attorney fees in this case. Second, it is clear from the record that Kohl was notified in advance that the court had allotted ninety minutes, and she did not contact the court to ask for more time prior to the hearing. Third, the record does not bear out Kohl's assertion that she had less time because her husband appeared. After her husband left and Kohl came into the courtroom, it was almost 9:00 a.m., and the court told the parties they had ninety minutes until the next scheduled matter at 10:30 a.m. Fourth, the record shows the court did not cut Kohl off without warning, but gave her sufficient reminders of the time remaining and the need to be more focused in her presentation. Fifth, the record shows that Kohl spent time on matters that had little relevance to the issue of the amount of fees she owed, such as questioning why Attorney Wettersten took certain actions when Kohl wanted her to take others. Sixth, Kohl does not specifically explain on appeal what additional information she would have presented had the court given her more time.

¶ 27. We conclude the court did not erroneously exercise its discretion in not allowing Kohl more time and that Kohl had a reasonable opportunity to present her case.

III. Determination on Amount of Fees

¶ 28. Kohl argues that the record did not support the amount of fees ordered by the court. To the extent Kohl is challenging the circuit court's findings of fact, we accept those unless they are clearly erroneous. WIS. STAT. § 805.17(2). To the extent Kohl is challenging the court's determination of what fees are reasonable, we affirm the circuit court if it properly exercised its discretion, that is, if it employed a logical rationale based on the correct legal principles and the facts of record. *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶ 22, 275 Wis. 2d 1, 683 N.W.2d 58 (citations omitted). Applying these standards, we conclude that Kohl has not shown any error in the court's determination of the amount of fees.

¶ 29. First, Kohl argues that time billed for Roslyn Thomas should not have been charged as paralegal time because she was told Thomas is a secretary, and the fee agreement provided that secretarial time is not charged. The circuit court found that "[m]any of the charges for Ms. Thomas, whether she also does secretarial work, appear to be for paralegal type services." Kohl does not argue that the record does not support this finding, but instead appears to argue that, regardless of the tasks Thomas performed, if she did not have "paralegal status," Kohl could not be billed for her time at paralegal rates. Kohl does not develop an argument to support this based on the contract language, and she

points to no evidence in the record that establishes that Thomas does not have the "status" necessary to perform the tasks of a paralegal.

¶ 30. Second, Kohl argues that it was "unreasonable" and "absurd" for Wettersten to charge her for listening to a message left with a secretary advising counsel that Kohl was running late for a meeting. She cites no legal authority or fee agreement provision that either prevents attorneys from charging for such time, or makes it unreasonable or absurd.

¶ 31. Third, Kohl argues that the court improperly allowed DeWitt to bill Kohl for the legal work it performed in connection with its motion for a judgment on attorney fees. The firm responds that this issue is raised for the first time on appeal, and Kohl does not dispute that assertion in her reply brief. We therefore do not address the issue further. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980), superceded on other grounds by WIS. STAT. § 895.52 (we generally do not address issues for the first time on appeal).

IV. Freeze Order

■

¶ 32. Kohl argues that the court lacked authority under to WIS. STAT. § 767.23(1)(h) to grant DeWitt's request to freeze $15,000 worth of her assets in the investment account. This statute gives the court the authority "during the pendency" of an action affecting the family, to "prohibit[] . . . either party from disposing of assets within the jurisdiction of the court." Kohl asserts that this provision was intended to protect each party from adverse actions by the other, not to protect attorneys. However, no such limitation is even arguably apparent from the statutory language or the context of the statute. Kohl also argues that the court's authority

exists only up to the time that the judgment of divorce is granted, because after that the action is not "pending." However, at the time the court entered the freeze order in this case, although it had granted the divorce, the issues of custody and placement, as well as the motion for attorney fees, remained to be resolved. The only reasonable construction of the statute is that this action affecting the family was still "pending" when the court entered the freeze order.

## V. Attorney Fees for Frivolous Appeal

¶ 33. DeWitt requests attorney fees on the ground that this appeal is frivolous under WIS. STAT. Rule 809.25(3). According to DeWitt, the appeal lacks a reasonable basis in fact and law.

¶ 34. In order for a party to be entitled to fees under WIS. STAT. Rule 809.25(3), every issue raised on appeal must be frivolous. *Baumeister v. Automated Prods., Inc.*, 2004 WI 148, ¶ 34, 277 Wis. 2d 21, 690 N.W.2d 1. Although we have decided against Kohl on the proper construction of WIS. STAT. § 767.23(3)(a), we conclude her position on that issue was not frivolous. We therefore deny the request for attorney fees.

*By the Court.*—Judgment affirmed.

¶ 35. DYKMAN, J. (*concurring in part; dissenting in part*). Kohl asserts that unless we interpret WIS. STAT. § 767.23(3)(a) (2003–04)[1] as not permitting the trial court to award attorney fees, that statute violates article I, § 5 of the Wisconsin Constitution. I agree with the majority that § 767.23(3)(a) permitted the court to

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

award attorney fees to DeWitt Ross and Stevens. But the majority fails to address whether the statute is unconstitutional. I would address the question presented, and conclude that the statute violates article I, § 5 of the Wisconsin Constitution.

¶ 36. To begin with, the majority misinterprets Kohl's argument. She does not argue that the statute would be constitutional if attorney fees could only be awarded if there was a substitution of attorneys. Nor do I agree with the majority that Kohl has not developed her argument. Kohl's argument is not complex. Article I, § 5 of the Wisconsin Constitution provides: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy . . . ." Kohl asserts that a dispute over attorney fees that leads to a judgment against her is a case at law. That is what the following, easily obtained authority provides. There is little to develop.

¶ 37. The supreme court recently explained the meaning of article I, § 5 in *Dane County v. Kenneth R. McGrew*, 2005 WI 130, 285 Wis. 2d 519, 699 N.W.2d 890. Though a divided court in *McGrew* issued two plurality opinions, the opinions do not differ in their description of the analysis we are to use when considering whether a statute violates article I, § 5 of the Wisconsin Constitution. Both cite *Village Food and Liquor Mart v. H&S Petroleum, Inc.*, 2002 WI 92, ¶ 11, 254 Wis. 2d 478, 647 N.W.2d 177, for the proposition that " 'a party has a constitutional right to have a statutory claim tried to a jury when: (1) the cause of action created by the statute existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848; and (2) the action was regarded at law in 1848.' " *McGrew*,285 Wis. 2d 519, ¶ 18 (Prosser,

J., joined by Wilcox, J. Roggensack, J.), ¶ 53 (Bradley, J., concurring, joined by Abrahamson, C.J., Crooks, J.).

¶ 38. In *Village Food*, a motor vehicle fuel seller brought a claim against another motor vehicle fuel seller under WIS. STAT. § 100.30(5m). That provision gives a cause of action to a person who is injured by a violation of other parts of the statute. Likewise, WIS. STAT. § 767.23(3)(a) gives attorneys a cause of action for their fees in actions affecting the family. Both causes of action are contained in larger statutory schemes. Village Food's cause of action is found in WIS. STAT., Ch. 100, entitled "Marketing; Trade Practices." Kohl's is found in WIS. STAT., Ch. 767, entitled "Actions Affecting the Family." Though the regulatory scheme in Ch. 100 did not exist in 1848, the court focused on the private cause of action in § 100.30(5m) and noted: "H & S ha[d] a constitutional right to have its statutory claim tried to a jury because the cause of action created by the statute existed, was known, and was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848." *Village Food*, 254 Wis. 2d 478, ¶ 30.

¶ 39. Likewise, divorce cases, with certain exceptions not relevant here, have never been tried to juries. WISCONSIN STAT. Ch. 79, § 15 (1849), provided that divorce suits "shall be conducted in the same manner as other suits in courts of equity . . . ." Matters in equity are not tried to juries. *Stilwell v. Kellogg*, 14 Wis. 499, 503–04 (1861). While section 16 of the chapter permitted courts to require husbands to pay "any sums necessary to enable the wife to carry on or defend the suit, during its pendency, and it may decree costs against

either party, and award execution for the same," Wis. Stat. Ch. 79, § 16 (1849), attorney fees, not costs, are at issue here.

¶ 40. Using the *Village Foods* test, I conclude that the cause of action created by the statue existed, was known or was recognized at common law in 1848. It would seem intuitive to lawyers that we have been suing for fees since the time the profession became known. And predictable that twenty percent of the sections in West's Wisconsin Key Number Digest under the heading "Attorney and Client" are devoted to "Fees and other remuneration." While I find no attorney fee cases from 1848, the existence of the cause of action appears well settled by 1862 when the supreme court decided *Butler v. Mitchell*, 15 Wis. 389, [*355] (1862), an action to recover attorney fees. I conclude that the first prong of the *Village Foods* test is met.

¶ 41. The second prong of the *Village Foods* analysis is whether the action was regarded at law in 1848. I conclude that it was. The distinction was described in *Gaston v. Babcock*, 6 Wis. 490, [*503], 494, [*506] (1857): "We think that 'cases at law' as these words are used in the constitution, are not [proceedings for the appointment of a guardian]. Cases at law are properly controversies between parties, and not the appointment of guardians for minors or insane persons." The distinction between cases where money damages are alleged and those where other relief is sought was discussed in *McLennan v. Church*, 163 Wis. 411, 416, 158 N.W. 73 (1916):

> In case of an action having been commenced in good faith to obtain equitable relief, and it subsequently appearing that such relief cannot, or ought not to be,

granted, but the facts disclosed by the evidence show that plaintiff has suffered a remediable wrong in the transaction forming the groundwork of the action, entitling him to be compensated by money damages, the court may, and where justice clearly requires it under the circumstances, should retain the cause and afford such relief, and make the same efficient by provisions for a recovery as in an ordinary legal action . . . .

¶ 42. A suit for attorney fees seeks money damages, and asserts a contractual right to those damages. In *Dilger v. Estate of McQuade*, 158 Wis. 328, 331, 148 N.W. 1085 (1914), the court noted: "An action for damages for breach of a contract is triable by jury in the circuit court as a matter of right."

¶ 43. I conclude that a suit for attorney fees was regarded as "at law" in 1848 because it was a suit on contract or quasi-contract, and because such a suit seeks money damages. Both prongs of the analysis of an asserted article I, § 5 right to a jury trial having been met, I would reverse and remand to permit the trial court to empanel a jury to hear Kohl's defenses to DeWitt, Ross and Stevens's claim for attorney fees. Since the majority does not do so, though I concur in much of its opinion, I dissent from its refusal to address the issue of Kohl's right to a jury trial on Dewitt, Ross & Stevens's claim for attorney fees.