COURT OF APPEALS
DECISION
DATED AND FILED

April 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2018AP1638-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2014CF204

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MICHAEL C. HENDERSON,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Jefferson County:  RANDY R. KOSCHNICK and JENNIFER L. WESTON, Judges.  *Affirmed.*

Before Fitzpatrick, P.J., Graham and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Michael Henderson appeals a judgment convicting him, after a jury trial, of one count of first-degree intentional homicide.   He also appeals an order denying his motion for postconviction relief.[1]   On appeal, Henderson argues that his constitutional rights to counsel were violated during discussions with law enforcement that took place on June 10 and June 13, 2014.   Henderson also argues that his confrontation rights were violated when the circuit court admitted statements written in a notebook kept by the victim.   For the reasons discussed below, we reject these arguments and affirm the judgment and order of the circuit court.

## BACKGROUND

¶2     Henderson was charged with first-degree intentional homicide for the death of a woman with whom he had a prior relationship that produced a child.   Initially, when he was contacted by police about the victim's death, Henderson claimed that he was at home in Waterloo on the evening the victim disappeared, and denied any meeting with the victim.   Police investigators triangulated Henderson's cell phone location and the resulting data showed that he was in Watertown on the night in question, and not in Waterloo as claimed.   On June 10, 2014, Henderson was arrested for obstructing an officer and was transported to the Watertown police station.   The following day, he was charged with first-degree intentional homicide.   Henderson was convicted after a jury trial.   The circuit court sentenced him to life in prison without the opportunity for parole.   Henderson's

---

[1] The Honorable Randy R. Koschnick presided at the trial and entered the judgment of conviction.  The Honorable Jennifer L. Weston entered the order denying Henderson's motion for postconviction relief.

motion for a new trial based on newly discovered evidence was denied after multiple evidentiary hearings. This appeal follows.

**DISCUSSION**

¶3 On appeal, Henderson challenges the circuit court's rulings on several evidentiary matters. He challenges the circuit court's admission of statements he made to law enforcement on June 10, 2014, and June 13, 2014. Henderson also challenges the court's admission of statements written in a notebook kept by the victim.

¶4 We will first address Henderson's argument that his statements to police on June 10 and June 13, 2014, should have been suppressed because police violated his Fifth and Sixth Amendment rights to counsel. *See* U.S. CONST. amend. V, VI. A circuit court's decision on a motion to suppress evidence presents a mixed question of fact and law. *See **State v. Casarez***, 2008 WI App 166, ¶9, 314 Wis. 2d 661, 762 N.W.2d 385. We do not reverse the circuit court's factual findings unless clearly erroneous, but the application of constitutional principles to those findings is reviewed de novo. *See **id.***

*Statements from June 10, 2014*

¶5 Sergeant David Brower testified at the suppression motion hearing that, on June 10, 2014, at around 10:00 a.m., he followed Henderson, who was riding in a vehicle. The vehicle stopped at an intersection, and Henderson got out and approached Brower. Brower advised Henderson that police were "looking to speak with him voluntarily." Henderson stated that he wanted an attorney. Brower told Henderson that Brower had probable cause to arrest him for obstruction, and placed Henderson under arrest. Henderson was then transported

to the Watertown Police Department. Later that day, Brower observed another police officer, Mike Beisbier, read Henderson his *Miranda* rights.[2]

¶6 Beisbier testified that, upon arrival at the police department, Henderson was taken to a conference room. Beisbier further testified that he and Brower shut the door, left Henderson alone in the room, and "basically stopped talking to him" based on the fact that Henderson had asked for an attorney. According to Beisbier, Henderson became agitated. The police captain and police chief expressed fear that Henderson would hurt himself, and directed that he be taken to the booking area. Beisbier and Brower advised Henderson that all he had to do was be fingerprinted and photographed and then he would be released. Beisbier testified that Henderson initially refused to walk and had to be carried to the booking area and, once there, refused to comply. Upon instruction from the police captain and police chief, Henderson was placed in a cell for "[a]s long as it took to fingerprint him and photograph him" and then he was to be released. Henderson continued to act agitated and, at one point, flooded the cell by clogging the sink. Beisbier testified that he had been observing Henderson in the cell via video camera, but that Henderson eventually put a wad of toilet paper over the camera. Beisbier felt he needed to go and physically check on Henderson "to make sure he was not hurting himself or damaging anything in the cell." When Beisbier went to the cell area, Henderson stated that he wanted to talk to him. One of the other officers asked Henderson if he was "reinitiating" discussion, and Henderson confirmed that he was. Beisbier asked Henderson about wanting a lawyer. Henderson said: "Fuck the lawyer. I want to talk to you now."

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

¶7     Beisbier testified that he then went with Henderson to an interview room and immediately read Henderson his *Miranda* rights.  Henderson signed a form indicating that he had been read his *Miranda* rights, understood those rights, and was waiving them.  Henderson signed the form at 4:01 p.m.  Beisbier went on to interrogate Henderson until Henderson asked again to speak to a lawyer.  Beisbier then stopped questioning Henderson and returned him to his cell because he was "still uncooperative."  Beisbier ordered dinner for Henderson and, when Beisbier brought the meal to him, Henderson asked to speak to Beisbier again about the obstruction charges.  Beisbier left the cell while Henderson finished his meal and then came back and asked if Henderson still wanted to speak with him.  Beisbier explained that he would have to read the *Miranda* warnings again, and Henderson confirmed that he understood.  Beisbier and Henderson then went back to the same interview room, where Beisbier read and had Henderson sign a *Miranda* waiver form at 8:01 p.m.  After about fifteen minutes, Henderson said he wanted to be done with the interview and go back to his cell.

¶8     The circuit court ruled that the statements made by Henderson to Beisbier during the two interview segments on the evening of June 10, 2014, were admissible.  Applying the two-step standard of review for suppression rulings, we first review the circuit court's findings of fact for clear error.  *See Casarez*, 314 Wis. 2d 661, ¶9.  Here, the court based its ruling on the testimony heard at the suppression motion hearings, as well as on Henderson's demeanor as observed on the video recordings of the interviews.  The court observed that Henderson appeared to be "relatively strong and committed in the face of law enforcement interrogation" and even, at some points, "appeared to be attempting to manipulate law enforcement."  The court also stated specifically that it found the testimony of Brower to be credible.  Brower testified that no interrogation of Henderson took

5

place from the time of the arrest until he was later given *Miranda* warnings. The court was not as explicit regarding its credibility findings as to Beisbier, but it can be inferred from the court's reasoning on the record that it found Beisbier's testimony regarding the events of June 10, 2014, to be credible as well. In assessing the voluntariness of Henderson's statements, the court referenced Beisbier's testimony that one of the reasons for the length of Henderson's detention on June 10, 2014, was that Henderson refused to comply with the booking procedure. The court found the police testimony on this point to be credible. Each of the circuit court's findings is supported by the record. We therefore uphold those findings, as they are not clearly erroneous, and go on to apply independently the relevant constitutional principles to those findings. *See Casarez*, 314 Wis. 2d 661, ¶9.

¶9 Henderson argues that his Fifth Amendment right to have counsel present during his custodial interviews on June 10, 2014, was violated. It is undisputed that Henderson stated at more than one point on June 10, 2014, that he wished to consult with a lawyer. Once an accused invokes his right to counsel during a custodial interview, questioning must cease until counsel has been made available to the accused, "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). An accused's request for counsel "must be unambiguous—in other words, the suspect must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *State v. Conner*, 2012 WI App 105, ¶18, 344 Wis. 2d 233, 821 N.W.2d 267 (quoted source and internal quotation marks omitted). The reviewing court must undertake a two-part inquiry. First, we must "determine whether the accused

actually invoked his right to counsel." *Id.*, ¶16. Then, if the accused did indicate he wanted an attorney, we must "determine whether he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Id.*

¶10 As discussed above, the record reflects that Henderson invoked his right to counsel and that, after he did so, law enforcement stopped questioning him. This is consistent with *Miranda v. Arizona*, 384 U.S. 436 (1966), which requires that, "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. Henderson twice initiated discussions with Officer Beisbier on the evening of June 10, 2014. On both occasions, Henderson signed a waiver of his rights under *Miranda*. A *Miranda* waiver is voluntary if it is "'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *State v. Hambly*, 2008 WI 10, ¶91, 307 Wis. 2d 98, 745 N.W.2d 48 (quoted source omitted). There is nothing in the record to suggest that Beisbier intimidated, coerced, deceived, or otherwise pressured Henderson to speak with him. Although Henderson was placed in a jail cell for a portion of his time at the police department, the record reflects that his containment was the result of his failure to comply with booking procedures, and not related to his willingness or unwillingness to give a statement to law enforcement. On the two different occasions that Beisbier sat down with Henderson in the conference room on the evening of June 10, 2014, Beisbier terminated the conversation as soon as Henderson said he no longer wanted to talk. In light of all of the above, we are satisfied that Henderson's Fifth Amendment rights were not violated during his interactions with law enforcement on June 10, 2014, such that the circuit court properly denied Henderson's suppression motion.

*Statements from June 13, 2014*

¶11    Henderson's second argument on appeal concerns statements he made to law enforcement on June 13, 2014, after he had been formally charged with the victim's homicide and was represented by an attorney. On June 13, 2014, while Henderson was in custody, he wrote a note addressed to the Jefferson County sheriff's department requesting to speak with his attorney and with law enforcement regarding a "very dangerous matter." The note stated that Henderson believed his family was in danger and requested immediate action. Detective Leah Meyer was working in her office at the time and received the note. Meyer alerted her supervisor. Meyer then had Henderson brought up from the jail and sat down with him in the law library. According to Meyer's hearing testimony, she did not know who Henderson's attorney was. Meyer testified that she was not there to question Henderson about his case, but to address the dangerousness of the situation. Meyer identified herself and read *Miranda* warnings to Henderson. Meyer testified that Henderson "waived his rights" and agreed to speak to her "without representation." Henderson then told Meyer that he had been threatened by a gang and, when she asked for more detail, Henderson said he wanted his attorney present. Meyer told Henderson that she may not be able to reach his attorney because it was a Friday evening.

¶12    Meyer testified that she acquired the name of Henderson's attorney and told Henderson that she had a possible after-hours number for the attorney. Meyer told Henderson he should start thinking about what he was going to do if she was unable to reach his attorney. Meyer then stopped speaking with Henderson and returned him to the jail. She testified that her conversation with Henderson lasted about ten minutes. Meyer testified that she was unable to reach Henderson's attorney and therefore left a detailed voice message for Henderson's

attorney on his personal cell phone. Meyer also contacted Sergeant Brower of the Watertown Police Department to "go over this gang information."

¶13    Meyer then went back to the jail and informed Henderson that she had left a voice mail message for his attorney. Henderson asked Meyer if police officers could drive by Henderson's home to check on his family's welfare. Meyer said it could be arranged, but that she "wouldn't really have any information to give" the officers. Meyer testified that she told Henderson that, if he had any information that would help them look for something in particular, he should let her know. According to Meyer's testimony, Henderson then said that he would talk. Meyer confirmed that what Henderson meant was that he would speak with law enforcement without his attorney present, and Henderson "confirmed that's what he wanted to do." Meyer informed Henderson that "it was his right" not to speak with law enforcement any further, and that she could send a squad past his house, to check the area in general, without any further details. Again, Henderson confirmed that he wanted to proceed to discussions without an attorney. Because Meyer was unfamiliar with the case, she contacted the Watertown Police Department.

¶14    Sergeant Brower then came to the Jefferson County sheriff's office and interviewed Henderson in the detectives' interview room. Brower explained that Henderson did not have to speak without his attorney present. Henderson confirmed again that he still wanted to talk without his attorney there. Brower read Henderson a notification of his *Miranda* rights, and Henderson signed a waiver form. Henderson went on to tell Brower that he and the victim had met up, and that they were attacked by men who he believed were gang members. According to Henderson, one of the men shot the victim as she tried to drive away. Henderson stated that he himself was able to escape by rolling under his car and

9

then fleeing. Brower testified at trial that, at the conclusion of the interview with Henderson on June 13, 2014, he told Henderson that his account was not believable for "many, many reasons."

¶15    The circuit court ruled that the statements given by Henderson to law enforcement on June 13, 2014, were admissible. The court found that the statements were made after Henderson had been given *Miranda* warnings and after he had been told repeatedly that he was not required to speak without his attorney present. The court stated that it found the testimony of Meyer and Brower to be "believable, internally consistent, and consistent with other evidence in the case." Generally, we will not disturb credibility findings on appeal, and we are not persuaded that we should do so here. *See State v. Wachsmuth*, 166 Wis. 2d 1014, 1023, 480 N.W.2d 842 (Ct. App. 1992) ("It is generally not the province of the reviewing court to determine issues of credibility."). The circuit court further found that there was nothing about the statements Henderson made to Brower that would lead the court to conclude that Brower violated Henderson's right to counsel. We are satisfied that the circuit court's findings as to the June 13, 2014 statements are not clearly erroneous, as they are supported by the record. We uphold those factual findings and proceed to our independent review of the relevant constitutional principles. *See Casarez*, 314 Wis. 2d 661, ¶9.

¶16    After a criminal complaint has been filed, "the Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings." *State v. Stevens*, 2012 WI 97, ¶66, 343 Wis. 2d 157, 822 N.W.2d 79 (quoted sources and internal quotation marks omitted). However, a defendant "can waive the Sixth Amendment right to counsel, even if already represented, without speaking to counsel about the waiver." *Id.*, ¶56.

10

¶17     Henderson argues on appeal that he unequivocally invoked his right to counsel when he stated in the note delivered to Detective Meyer on June 13, 2014, that he wanted to speak with his attorney, and that the *Miranda* warnings he was given after he delivered the note were invalid.  The State asserts that Henderson's note was too equivocal to constitute an invocation of his Sixth Amendment right to counsel.  We agree with the State that Henderson's request for counsel in his note was not unambiguous or unequivocal.  The note stated that Henderson wanted to talk to his attorney "as well as talk to the Sheriff Dept." but it also conveyed a sense of urgency as to his fears regarding his family's safety.  In *Davis v. United States*, 512 U.S. 452 (1994), the Supreme Court recognized that "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Id.* at 461.

¶18     As discussed above, upon receiving the note, Meyer made contact with Henderson to get further details "so as to take any appropriate law enforcement action to keep his family safe."  She gave Henderson *Miranda* warnings at the beginning of her contact with him.  Henderson waived his rights and agreed to speak with her.  Meyer obtained the name of Henderson's attorney. She explained that she would attempt to contact the attorney, but that she may not be able to reach him immediately.  Meyer advised Henderson to think about what he wanted to do if the attorney was not immediately available.  When Meyer returned to the jail after leaving a voice message for Henderson's attorney, Meyer again told Henderson that he had a right not to speak further without his attorney present.  Henderson confirmed that he wanted to talk without his attorney present. Henderson went on to speak with Sergeant Brower, who again gave Henderson *Miranda* warnings and confirmed with Henderson that it was his desire to talk

without his attorney present. Henderson again signed a waiver of his rights. There is nothing in the record to suggest that Henderson did not understand the rights he was waiving or that he waived them as a result of intimidation, coercion, or deception. *See Hambly*, 307 Wis. 2d 98, ¶91. "[A]fter a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis*, 512 U.S. at 461.

¶19 In light of all of the above facts, we are satisfied that Henderson's waiver of his *Miranda* rights to remain silent and to have counsel present during his discussions with law enforcement on June 13, 2014, was "'the product of a free and deliberate choice.'" *Hambly*, 307 Wis. 2d 98, ¶91 (quoted source omitted). Accordingly, we conclude that the circuit court properly denied Henderson's motion to suppress his statements given to law enforcement on June 13, 2014.

*Written Statements from the Victim*

¶20 Henderson's third argument on appeal concerns the circuit court's admission of three statements written in a notebook kept by the victim. Henderson argues that the statements should have been excluded as inadmissible hearsay. He further argues that the statements are testimonial in nature and that their admission violated his confrontation rights under the Sixth Amendment and *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The State counters that the statements are non-testimonial and that, even if they were testimonial, they would nevertheless be admissible under the doctrine of forfeiture by wrongdoing. We need not decide whether the doctrine of forfeiture by wrongdoing applies in this case because we conclude that the written notebook statements are non-testimonial in nature.

¶21     In *Crawford*, the Supreme Court concluded that the "principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* at 50.    Therefore, not all hearsay evidence implicates the Confrontation Clause's core concern, only that which is testimonial in nature. *See id.* at 51.    A testimonial hearsay statement is admissible against a criminal defendant only if the witness who made the statement is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Id.* at 59.    "A statement is testimonial only if in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *State v. Reinwand*, 2019 WI 25, ¶24, 385 Wis. 2d 700, 924 N.W.2d 184 (quoted sources and internal quotation marks omitted).

¶22     Here, the written statements at issue were from a notebook kept by the victim that was found in a closet in her home.  The State argued that it did not appear that the victim had been sharing the notebook with anyone.  The notebook contained different types of writings, including budget and financial information, contact information, and personal notes.  The circuit court concluded that the notebook entries were non-testimonial.

¶23     Whether to admit hearsay statements under a hearsay exception is a discretionary determination left to the circuit court. *See State v. Weed*, 2003 WI 85, ¶9, 263 Wis. 2d 434, 666 N.W.2d 485.  Here, the circuit court discussed and applied the appropriate legal standard for determining whether a statement is testimonial.  The court concluded that there was nothing in the record to suggest that the notebook entries were made in anticipation of being used in the investigation or prosecution of a crime.  Because the court employed a logical rationale based on the correct legal principles and the facts of record, we are

13

satisfied that it properly exercised its discretion in concluding that the notebook statements were non-testimonial. *See **Kohl v. DeWitt Ross & Stevens***, 2005 WI App 196, ¶28, 287 Wis. 2d 289, 704 N.W.2d 586. Accordingly, the court's admission of the notebook statements did not violate Henderson's confrontation rights.

     *By the Court.*—Judgment and order affirmed.

     This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).