COURT OF APPEALS
DECISION
DATED AND FILED

March 25, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP2419**

Cir. Ct. No. **2015FA788**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

VICTORIA LYNN SCHILLER
F/K/A VICTORIA LYNN GURMAN,

JOINT-PETITIONER-APPELLANT,

V.

THEODORE HOWARD GURMAN,

JOINT-PETITIONER-RESPONDENT.

APPEAL from orders of the circuit court for Dane County: PETER ANDERSON, Judge. *Affirmed.*

Before Blanchard, Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Victoria Schiller appeals pro se from post-judgment orders entered in this divorce matter. Schiller challenges the circuit court's interpretation of a marital settlement agreement that she entered into with her former spouse, Theodore Gurman. Schiller also challenges determinations made by the circuit court regarding attorney fees, sanctions, and disclosure of documents. For the reasons discussed below, we reject Schiller's arguments and affirm.

## *Background*

¶2     The following facts are undisputed. Gurman and Schiller, who have one minor child, were married in 2009 and began divorce proceedings in April 2015. During the marriage, Gurman and others founded a business, which we will refer to as the Company. Shares of the Company's stock comprised a large portion of Gurman and Schiller's marital estate. In August 2016, Gurman resigned from the Company, but remained on its board of directors and continued to hold a significant amount of its stock.

¶3     Gurman and Schiller entered into a marital settlement agreement (MSA) regarding maintenance and the division of their property and debts at divorce. The circuit court approved the MSA on May 31, 2016. Under the terms of the MSA, Gurman and Schiller elected not to secure any formal valuation of the Company. Under Section III.A of the MSA, the parties agreed that Schiller would be paid a Cash Settlement Payment as follows:

> Cash Settlement Payment. THEODORE shall pay the sum of one million one hundred forty-five thousand dollars ($1,145,000.00) to VICTORIA at the rate of eight thousand dollars ($8,000.00) per month. Simple interest shall accrue on the unpaid balance at 4.5%. The first payment is due June 15, 2016 and payments shall be made to VICTORIA by the 15th of each month thereafter until 60

> payments have been made. At that time any remaining balance is immediately due and payable to VICTORIA. If the full amount of the balance is not paid at this time, the interest rate shall be 7% simple interest commencing on June 15, 2021, the due date of the final payment.

As security for the Cash Settlement Payment, Gurman agreed under Section III.B of the MSA to pledge his shares of Company stock as collateral for Schiller's benefit.

¶4 The circuit court incorporated the MSA into the final judgment of divorce entered on June 12, 2017. Schiller did not appeal the judgment of divorce. Rather, she filed numerous post-judgment motions in the circuit court. The motions included, but were not limited to, several orders to show cause seeking contempt rulings against Gurman and motions to compel Gurman to comply with certain discovery requests. In another motion, Schiller challenged whether Gurman had pledged his Company stock as promised in the MSA, and she sought a court determination that Gurman be prohibited from pre-paying the Cash Settlement Payment.

¶5 The circuit court held a hearing on Schiller's filings on April 18, 2018, and following the hearing, it entered a written order on June 11, 2018. According to the June 11, 2018 order, Schiller was no longer pursuing the matters set forth in her orders to show cause for contempt. The court nonetheless determined that Gurman was not in contempt under the facts presented. The court further determined that the MSA "does not preclude prepayment of the principal amount of the Cash Settlement Payment" and that Schiller "has the security interest in the [Company] stock as granted by the [MSA]." The court further dismissed all of Schiller's actions pending before the court.

¶6 Schiller did not appeal the circuit court's June 11, 2018 order. Then, over nine months later, Schiller filed a letter with the circuit court objecting to the order. Gurman filed an affidavit renewing a prior request for attorney fees incurred in litigating Schiller's many filings, which he argued were meritless. Schiller later withdrew her letter objection, but nonetheless continued to raise various challenges to the April 18, 2018 hearing and June 11, 2018 order.

¶7 The Company was sold in 2019. Gurman informed Schiller of the sale and made arrangements to pay the outstanding balance of the Cash Settlement Payment.

¶8 Several weeks later, Gurman filed an affidavit in the circuit court stating that Schiller would not accept final payment. Schiller then filed a motion to compel discovery, again challenging aspects of the April 18, 2018 hearing and the resulting June 11, 2018 order. The circuit court scheduled a hearing to address these filings. During that hearing, the court made a determination to appoint a guardian ad litem for Schiller based on concerns that Schiller was making decisions that were not in her best interests.

¶9 Schiller next appeared in court with her guardian ad litem, Attorney Shane Falk, for a hearing on the merits of the dispute regarding the Cash Settlement Payment. Following the hearing, the circuit court entered a written order on November 11, 2019, finding that the net amount of the Cash Settlement Payment due to Schiller was $725,397.17, that Gurman had fully satisfied the Cash Settlement Payment, and that the payment was being held for Schiller by Gurman's attorney. The court's order extinguished any lien rights that Schiller had in the Company's stock. The court also ruled that Gurman was not required to provide any documents to Schiller beyond the annual exchange of financial

information specified in the divorce judgment. The court denied Schiller's request for sanctions, and determined that Schiller had engaged in over-trial such that she was required to pay $1,000 toward Gurman's legal fees and expenses.

¶10   Schiller filed a motion for reconsideration, which was denied. This appeal follows.

### *Discussion*

¶11   As a threshold matter, we note that Schiller's brief challenges various aspects of the underlying circuit court proceedings and identifies numerous issues for this court's review. Several of these issues are interrelated and overlapping. Other issues are not properly before this court on appeal, as we will discuss below. Still other arguments are difficult to understand or are undeveloped. On appeal, "[a] party must do more than simply toss a bunch of concepts into the air with the hope that either the trial court or the opposing party will arrange them into viable and fact-supported legal theories." *State v. Jackson*, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999). The depth of our discussion below is proportional to Schiller's development, or lack of development, of each issue. Any arguments in Schiller's briefs that we do not address are either patently meritless or so inadequately developed that they do not warrant our attention. *See Libertarian Party of Wis. v. State*, 199 Wis. 2d 790, 801, 546 N.W.2d 424 (1996) (an appellate court need not discuss arguments that lack "sufficient merit to warrant individual attention").

¶12   We turn first to Schiller's argument disputing the circuit court's determination of the amount due to her under the MSA, which was incorporated into the judgment of divorce. In reviewing legal issues, such as construction of a divorce judgment, we apply a de novo standard of review. *Dickau v. Dickau*,

2012 WI App 111, ¶14, 344 Wis. 2d 308, 824 N.W.2d 142. We apply the rules of contract construction to a divorce judgment that is based on the parties' stipulation. *Id.* Terms are to be given their plain and ordinary meaning. *Id.*

¶13    Schiller asserts that she is entitled to payment of $2,193,199.30, plus interest, rather than the sum of $725,397.17 stated in the court order. Schiller arrives at the larger sum by arguing that, in addition to the Cash Settlement Payment, she is also entitled to half the proceeds that Gurman receives from any sales of stock. Schiller relies upon Section III.C of the MSA as support for her argument that she is entitled to additional payment above and beyond the Cash Settlement Payment.

¶14    Section III.C of the MSA provides in relevant part:

> Additional Payments to VICTORIA. … If THEODORE sells, assigns, transfers or otherwise redeems for cash any shares of [the Company] or any successor entity, or if the THEODORE receives any cash payment following the sale of the assets of [the Company] or any successor entity, he shall pay one-half of any such amounts to VICTORIA within 10 days of receipt, which shall be applied against the remaining balance of the Cash Settlement Payment. THEODORE shall pay all taxes on all proceeds. At the time of payment, THEODORE shall provide VICTORIA with written documentation of the amount(s) and date(s) received to verify the payment amount. The sale of shares, the exercise of options and the sale of any interest in [the Company] do not constitute a substantial change of circumstances for child support purposes. Further, so long as THEODORE has a Cash Settlement Payment obligation to VICTORIA, he shall not be required to pay child support on any share proceeds, option proceeds or any other amounts received by him resulting from the sale of any interest in the business.

¶15    Here, applying plain language interpretation, we need look no further than the face of Section III.C, which states that, for additional payments, Gurman "shall pay one-half of any such amounts to VICTORIA within 10 days of

receipt, *which shall be applied against the remaining balance of the Cash Settlement Payment.*" (Emphasis added.) This language is unambiguous in providing that the payments from stock-sale proceeds are intended to reduce the Cash Settlement Payment to Schiller. Schiller's argument that she is entitled to additional payment, separate from the Cash Settlement Payment, is based on an erroneous interpretation of the MSA, and we reject it on that basis.

¶16 Next, Schiller challenges the circuit court's interpretation of the terms of payment stated in the MSA. The circuit court made an oral ruling at the April 18, 2018 hearing that the MSA does not preclude prepayment of the principal amount of the Cash Settlement Payment. The court then reduced that ruling to writing in an order entered on June 11, 2018. Schiller argues that the court's interpretation was wrong and that prepayment is not permitted under the MSA.

¶17 Gurman responds in his brief that this court lacks jurisdiction to entertain Schiller's arguments regarding prepayment. Gurman asserts that the June 11, 2018 order was a final order for purposes of appeal and that, because Schiller did not file a timely notice of appeal as to that order, this court lacks jurisdiction to review it. Gurman cites *Wainwright v. Wainwright*, 176 Wis. 2d 246, 250, 500 N.W.2d 343 (Ct. App. 1993), which provides that "failure to appeal within the times set by either sec. 808.04, Stats., or sec. 805.17(3), Stats., deprives this court of jurisdiction." In her reply brief, Schiller does not respond to Gurman's arguments on this point; therefore, we deem her to have conceded the issue. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession). On that basis, we reject Schiller's argument regarding prepayment under the MSA.

7

¶18    Schiller also argues that the circuit court should have found Gurman in contempt for failing to comply with the terms of payment under the MSA and for failing to provide her with certain post-divorce documents related to his finances and the finances of the Company.  We review a circuit court's use of its contempt powers for a proper exercise of discretion.  ***Benn v. Benn***, 230 Wis. 2d 301, 308, 602 N.W.2d 65 (Ct. App.1999).  Here, the record reflects that the court accepted the interpretation of the MSA advanced by Gurman and ordered payment consistent with that interpretation.  The record further reflects that the court determined that Gurman was not required to provide any documents to Schiller related to the sale of his stock in the Company, or any other matter, other than the annual exchange of financial information specified in the divorce judgment.  Given these determinations, which are supported by the record and are consistent with the plain language of the MSA, we cannot conclude that it was an erroneous exercise of discretion to deny Schiller's requests to find Gurman in contempt.

¶19    We turn next to Schiller's argument that the circuit court erred in ordering that she be required to contribute to Gurman's attorney fees due to overtrial.  "Overtrial is a doctrine developed in family law cases that may be invoked when one party's unreasonable approach to litigation causes the other party to incur extra and unnecessary fees."  ***Zhang v. Yu***, 2001 WI App 267, ¶13, 248 Wis. 2d 913, 637 N.W.2d 754.  We review a circuit court's decision to award fees and the determination of the reasonableness of the fees under the erroneous exercise of discretion standard.  ***Id.***, ¶12.  Here, the circuit court had previously advised Schiller that she could be assessed attorney fees for frivolous filings.  The record reflects that the court considered the proper standards for determining

whether to award attorney fees and for determining whether the attorney fees are reasonable, citing WIS. STAT. § 814.045 (2019-20).[1] The court considered Schiller's ability to pay, her employment status and education, and the nature of the filings she had brought before the court, before ordering that she pay a total of $1,000 toward Gurman's attorney fees. A circuit court properly exercises its discretion when it employs a logical rationale based on the correct legal principles and the facts of record. *Kohl v. DeWitt Ross & Stevens*, 2005 WI App 196, ¶28, 287 Wis. 2d 289, 704 N.W.2d 586. The record demonstrates that the court did so here with regard to the award of attorney fees.

¶20 Schiller further requests that this court "reverse all orders altering the terms of the commercial securities pledge, to Victoria's benefit[.]" Schiller cites WIS. STAT. § 767.59(1c)(b), which provides: "A court may not revise or modify a judgment or order that waives maintenance payments for either party or a judgment or order with respect to final division of property." We reject Schiller's argument because she fails to persuade us that any order of the circuit court revised or modified the terms of the MSA. The court interpreted the MSA in a manner that Schiller does not agree with, but interpretation based on the plain language of the document does not equate to modification.

¶21 Finally, we turn to Schiller's argument regarding the appointment of a guardian ad litem. We agree with the position of Attorney Shane Falk, as set forth in his guardian ad litem's brief, that the record establishes that the court acted reasonably and was within its authority to appoint a guardian under the

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

circumstances. The circuit court cited ***Kainz v. Ingles***, 2007 WI App 118, ¶52, 300 Wis. 2d 670, 731 N.W.2d 313, in which this court stated:

> [T]he determination of whether an individual has satisfied the standard for mental incompetence under WIS. STAT. § 807.10 should be made by considering the following three factors: (1) the person's ability to reasonably understand pertinent information; (2) the person's ability to rationally evaluate litigation choices based upon that information; and (3) the person's ability to rationally communicate with, assist and direct counsel.

The court considered this standard on the record and found, based on its own observations of Schiller during the course of the litigation, that she was not able to rationally pursue her own best interests in the litigation. Nothing in Schiller's briefs persuades us that the court erred in appointing a guardian ad litem.

¶22 Similarly, we are satisfied that the circuit court acted within its discretion when it ordered that $100,000 from the Cash Settlement Payment be deposited into Attorney Falk's trust account for the payment of Falk's fees as well as fees incurred by the guardian ad litem appointed for the parties' minor child. The court articulated its reasoning for its decision on the record, including the fact that Schiller had failed to make timely payments to Attorney Falk in the past. After $100,000 was placed in trust, the circuit court issued orders periodically approving disbursements from the trust account for the payment of guardian ad litem fees. Schiller does not dispute any specific charge or expenditure by Attorney Falk or the child's guardian ad litem, nor does she challenge any particular trust account disbursement ordered by the court. In sum, Schiller fails to persuade us that the circuit court erroneously exercised its discretion as to its handling of the guardian ad litem fee issue, or any other issue identified in her briefs.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.